[Civ. No. 6014. First Appellate District, Division One.—January 27, 1928.]

BETTY HORN, Respondent, v. YELLOW CAB COMPANY (a Corporation), Appellant.

Roy A. Bronson and E. D. Bronson, Jr., for Appellant.

J. Hampton Hoge for Respondent.

KNIGHT, J.—A verdict of $7,500 damages was awarded respondent on account of personal injuries sustained by her

as a result of the alleged negligence of appellant's employee, and from the judgment entered on said verdict this appeal has been taken.

The action was tried with two companion cases, and the appeals were consolidated, but on stipulation the appeals in the other two actions have been dismissed. The sole ground urged for reversal of the judgment in the present case is that the amount of damages awarded is excessive.

The three actions grew out of a collision occurring on the morning of July 5, 1924, at the corner of Post and Laguna Streets, San Francisco, between a taxicab operated by the appellant company in which the three plaintiffs were riding as passengers for hire, and an automobile. The taxi was being driven at a speed approximating thirty miles an hour while traversing the intersection of the streets mentioned, and struck the rear end of an automobile running at right angles with the taxi. Following the impact the taxi traveled a distance of ninety feet, ran up on the sidewalk and crashed into a building on the wrong side of the street, overturning the taxi, injuring the occupants thereof and damaging the building. At the trial appellant admitted liability for the accident and the issue before the jury was therefore confined to the question of the extent of the injuries suffered by the occupants of the taxi and the damages proximately resulting therefrom. It is conceded on this appeal that respondent sustained special damages in the sum of $877.65 on account of doctor's bills, hospitalization, and loss of employment, which leaves an assessment of $6,622.35 as compensation for the disability and the attendant pain, suffering, and inconvenience.

It appears from the testimony that besides sustaining a severe nervous shock respondent was thrown violently to the floor of the taxi, injuring her back; also that her head struck against some object driving her teeth through her lip. The injury to her back instantly caused total disability, which was accompanied by intense pain. She was removed first to the emergency hospital and then to the home of a friend. The physician who was called diagnosed the injury to her back as a slip of the sacroiliac joint, but on account of the agonizing pains accompanying the injury was unable to treat the same fully at the home, and in a couple

of days ordered respondent to the hospital where, after placing her under the influence of an anesthetic, he manipulated the joint into place and put the patient in a plaster cast extending from the hips up to the region of the ribs, which she wore for a period of three weeks; and during that time she was compelled to lie on her back. Following the removal of the cast her body was strapped with adhesive tape for about a week, and thereafter placed in a flexible brace reinforced with steel, which she was still wearing at the time of trial, some nine months after the accident. She remained in the hospital for five weeks, and was wholly unable to perform any kind of work until the following September, when she obtained employment as a stenographer; but on account of exhaustion and constant pain caused by the injury she was unable to work to full capacity, and in January, 1925, was compelled to give up the position.

Instantly upon receiving the injury and for a considerable period of time thereafter she suffered excruciating pain, it being necessary immediately following the accident to muffle her screams by placing a handkerchief in her mouth and a pillow over her head; and she was still suffering from pain at the time of trial, although it was much less severe.

As shown by the medical testimony, the sacroiliac joint is the point of junction of the sacrum, which is a portion of the lower spine, with two of the bones of the pelvis. It is not a movable joint, but consists of flat surfaces held together by ligaments. A slip of the segments of the sacroiliac joint is caused by a wrench or twist severe enough to tear the ligaments, and when this occurs there is necessarily a painful injury to a cluster of nerves centering in the sacral plexus, two of them being the sciatic nerves extending down the back of the thigh and which are eventually distributed in the lower leg and the foot. The immediate effect of such an injury is to prevent the patient from stooping or turning, or from lifting any weight or performing any kind of work calling into play the muscles attending the spine. The evidence shows that in respondent's case the sacroiliac ligaments were stretched and torn to the extent of causing internal hemorrhage.

The evidence further shows that at the time of trial respondent was still under the care of her physician; that she was suffering from nervous shock and from pain which extended from the back down the legs into the feet; that she was not able to sit long in one position nor to walk any considerable distance; and that as a result of the stretching and tearing of the sacroiliac ligaments there was a predisposition to another slip of the joint, which could be caused by a strain. Although there was no direct evidence establishing the period of time respondent would continue to suffer pain and partial disability, it appears from the testimony given by the medical expert produced by appellant that "the so-called sacroiliac slip is one of the most severe conditions in this region that can possibly arise"; and other medical testimony was given to the effect that for some time at least, subsequent to the trial, respondent would be unable to follow her employment as stenographer on account of the pain which would be caused by sitting on the sciatic nerve, by twisting her body, lifting her leg, or arising from a chair.

In support of its contention that the amount of damages awarded is excessive appellant cites a number of cases from this jurisdiction and others wherein judgments have been reversed on that ground; but, as frequently stated, a classification based upon figures of a particular verdict is of little value because of the innumerable and often indeterminable factors entering in question (8 Cal. Jur. 839). No two cases exactly alike are to be found, and consequently no absolute rule is applicable to all cases (*Morgan* v. *Southern Pacific Co.*, 95 Cal. 501 [30 Pac. 601]). ■ Therefore, the only method of determining whether a verdict is excessive is by comparing the amount of damages awarded thereby with the evidence (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 Pac. 513]); and where the element of past and future pain is involved it is always difficult to fix the amount of damages which should be allowed therefor (*Pedrow* v. *Federoff*, 77 Cal. App. 164 [247 Pac. 212]). ■ The remedy for safeguarding against the danger of excessive verdicts is necessarily, to a great extent, committed to the judge who presides at the trial, because it is presumed that he will carefully weigh the evidence himself and not allow a verdict to stand if he believes that excessive damages have been

awarded by the jury under the influence of passion or prejudice; and it is only in cases where the excess appears as a matter of law, or where the recovery is so grossly disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice or at first blush raises a presumption that it is the result of passion, prejudice, or corruption, rather than honest and sober judgment, that a reviewing court is justified in interfering (*Bond* v. *United Railways*, 159 Cal. 270 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]; *Pedrow* v. *Federoff*, *supra;* 8 Cal. Jur. 834).

██ In view of the facts hereinabove narrated, which on appeal must be accepted as true, showing, as they do, that the major injury received by respondent was of a particularly distressing, disabling, and serious character, from which she would probably not fully recover for some time subsequent to the trial, and that there was a predisposition to recurrence, we think that the case is not one which may be fairly said to fall within the foregoing rule warranting interference on appeal.

The judgment is, therefore, affirmed.

Tyler, P. J., and Cashin, J., concurred.