[Civ. No. 9770. First Appellate District, Division One.—January 28, 1936.]

CHRISTINE MARTIN BRITTING, Respondent, v. PETER DEWES, Appellant.

464

J. Hampton Hoge and A. Dal. Thomson for Appellant.

Phillip Barnett, Jacobs, Blanckenburg & May and Samuel Vartan for Respondent.

KNIGHT, J.—Plaintiff was injured while alighting from an automobile standing at the bottom of a hill on Sacramento Street in San Francisco when another automobile belonging to the defendant Peter Dewes, which had been parked at the top of the hill, rolled driverless and unattended down the hill, and at a rate of speed estimated between thirty and forty miles an hour crashed into the automobile from which plaintiff was alighting; and on account of the personal injuries sustained she brought this action for damages. At the trial, which took place before the court sitting with a jury, negligence on the part of the defendant was admitted, and consequently the question of the amount of damages, if any, plaintiff was entitled to receive, was the sole issue the jury was called upon to determine. The total amount of damages sued for, general and special, was $7,430, and the jury

awarded $3,000, which defendant contended was grossly excessive, and he moved for a new trial mainly on that ground. The motion was denied, and defendant has taken this appeal from the judgment, contending here, as he did before the trial court, that the amount of damages awarded by the jury is grossly excessive.

With respect to the matter of the alleged special damages, it appears that for nearly eight years preceding the accident plaintiff had been employed as secretary and assistant to the manager of a company engaged in the shipment and distribution of fruits and vegetables throughout the United States; that her duties consisted of secretarial office work and traveling about to different distant places to attend to the proper distribution of the shipments; that she received therefor weekly wages of $40 and an additional weekly payment of $25 for living expenses; and plaintiff testified that on account of the injuries she received she was unable to continue on with said employment, and as a consequence was deprived for a period of thirty-two weeks of her earnings of $40 a week, and the additional weekly sum of $25 paid to her as living expenses; that during such period of time she had been able to earn only $150 from other sources.

In considering the question of whether the jury's award is excessive, it is, of course, impossible to ascertain what portion of the total award of $3,000, if any, the jury allocated to cover the alleged special damages sustained. It would seem, however, that if as plaintiff testified and the jury impliedly found, plaintiff's injuries were of such serious nature as to prevent her for the period of time mentioned from continuing the duties of the employment she had followed preceding the accident, the trial judge was justified in holding on motion for new trial that the amount of damages awarded by the jury was not grossly excessive.

In this connection the evidence shows that the force of the impact of the two automobiles threw plaintiff violently against the steering wheel and to the floor of the automobile from which she was about to alight. She suffered no fractured or dislocated bones, and about half an hour after the accident was driven by appellant's father to the home of a Mr. and Mrs. Roberts, with whom she was riding at the time of the accident, and she was able to walk unassisted from the automobile into the house. After remaining there a few hours

she proceeded to her own residence and went to bed immediately. On the second day after the accident she consulted a doctor, and she was still under treatment by him at the time of the trial, which took place about a year after the accident happened. In describing her condition the doctor testified that he found her suffering from bruises and strains, a twisting of the spine from the base of the skull to the lower back, with deep injuries to the neck and upper and lower areas of the spine; that the injuries to the upper area involved the nerves, muscles and ligaments; that there was tenderness of those areas and the injuries were severe enough to tear some of the tissues and produce swelling. He further testified that the top of her head was slightly numb to pressure and sensitive to cold; that her neck was stiff, with the muscles tightened; that on the left side of the neck there was a large black and blue bruise which was swollen and caused much pain upon rotation of the neck; that there were deep bruises in the deltoid area, extending to the elbow, tenderness on the spine from the skull to the angle of the scapula, with black and blue area, also pain upon pressure over the base of the skull; that there was limitation of movement of the spine and complaints of pain when lying on her back, and an inability to sleep; furthermore that there were multiple bruises to the arms and legs, with quite large black and blue areas on the legs; that the veins of her legs were bruised rather deeply, causing little knots to form which later developed into an infection called phlebitis; and that there were deep bruises on the left shoulder which he considered were caused either by pulling, twisting, or some driving force. As to the medical treatment administered, the doctor testified that she was kept in bed for a while and that her legs were treated for a long period of time for phlebitis; that it was necessary to wrap them with cotton dressings and elastic bandages, and to massage and "bake" her arms, legs and back; that she was also given medication for the headaches about which she complained, opiates to relieve pain and bring about sleep, and general treatment to build her up physically. He also testified that up to the time of trial the treatments required seventy-three office visits by plaintiff; that most of the injuries to her collar-bone, shoulder and spine persisted over a period of a year, indicating a tearing and bruising of those areas which were probably of a more or less permanent nature; and that

her injuries incapacitated her from full time work and caused a rather heavy expense for treatment. About a year after the accident plaintiff was examined by another doctor, who testified that at that time he found tenderness over the forepart of the scalp; that bending her neck forward caused some pain at the base of the neck; that rotation of the neck or bending it to the right or left caused pain in the muscles of the shoulder blades; that on pressure there was some tenderness over the spine in the lower thoracic and upper lumbar regions, and that shoulder movements showed a very marked crepitus or cracking, which caused considerable pain.

■ The authority to fix the amount of damages that shall be allowed in a case of this kind is committed almost entirely to the sound discretion of the jury; and in order to safeguard against the danger of excessive verdicts, the judge of the trial court in ruling on motion for a new trial may consider the evidence anew and set aside the verdict of the jury if in his opinion excessive damages have been awarded under the influence of passion or prejudice. On appeal, however, the reviewing court may not exercise the power of revision unless it is able to hold, as a matter of law, that the award of damages made by the jury and sustained by the trial court is so grossly disproportionate to any compensation reasonably warranted by the facts as presented on appeal as to shock the sense of justice and raise at once a presumption that it was the result of passion, prejudice or corruption, rather than an honest, sober judgment. (*Reneau* v. *Hirsch,* 88 Cal. App. 1 [262 Pac. 1100]; *Bond* v. *United Railroads,* 159 Cal. 270 [113 Pac. 366, Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687]; *Horn* v. *Yellow Cab Co.,* 88 Cal. App. 678 [263 Pac. 1025]; *Gregoriev* v. *Northwestern Pac. R. R. Co.,* 95 Cal. App. 428 [273 Pac. 76]; *Kelley* v. *Hodge Transportation System,* 197 Cal. 598 [242 Pac. 76].) And in the present case it is evident, in view of the testimony above narrated, that we would not be warranted in so holding.

■ Appellant points out certain portions of the cross-examination of plaintiff and calls attention to the testimony given by two medical experts and other witnesses produced by him, contending in this regard that circumstances were shown thereby which proved that plaintiff was not seriously injured, nor disabled to the extent of preventing her from performing the duties of the employment in which she was

engaged at the time of the accident or other like duties. It is evident, however, that the circumstances relied on by appellant at most raised but a conflict in the evidence; and it is well settled that in dealing with questions of this kind on appeal, every conflict must be resolved in favor of the plaintiff and she must be given the benefit of every inference that can be reasonably drawn in support of her claim. (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.,* 156 Cal. 273 [104 Pac. 312]; *Sarcady* v. *Biedenweg,* 116 Cal. App. 581 [3 Pac. (2d) 43]; *Sites* v. *Howry,* 108 Cal. App. 348 [291 Pac. 597]; *Johnson* v. *Pearson,* 100 Cal. App. 503 [280 Pac. 394]; *May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789].)

 The trial court gave the usual instruction as to the measure of damages, wherein it stated among other things that in estimating the amount of damages, the jury might "consider the physical and *mental* pain, *if any,* suffered . . . " (italics ours); and defendant contends that there was no element of mental pain involved in the case, and that therefore the instruction was erroneous. There is no merit in the point. The symptoms attending plaintiff's injuries, as shown by the evidence, justified the court in giving the instruction, and by reason of the inclusion therein of the words "if any", the question of whether or not plaintiff did suffer mental pain was left entirely to the determination of the jury as an issue of fact. So far as we know, it may have reached a negative conclusion thereon, and consequently allowed no damages whatever therefor.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 27, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1936.