[Civ. No. 2960.   Third Appellate District.—March 18, 1926.]

THOMAS J. PEDROW and LYDIA PEDROW (His Wife), Respondents, v. W. R. FEDEROFF et al., Appellants.

[1] Negligence—Lurching of Taxicab—Injury to Alighting Passenger—Proximate Cause.—If, as a passenger is in the act of alighting therefrom, a taxicab makes a sudden jerk or lurch or moves while the driver is still in his seat at the wheel, and said passenger, exercising due care when in the act of leaving the taxicab, is thrown to the ground and receives injuries by reason of such moving or lurching of the taxicab, the court is authorized to find that the proximate cause of injuries was the negligence of the taxicab company.

[2] Id.—Conflicting Evidence—Verdict—Appeal.—In an action for damages because of injuries suffered by plaintiff wife while alighting from defendants' taxicab, where there is a substantial conflict in the evidence upon the question of how the accident resulting in the injuries happened, the appellate court is without legal right to interfere with the verdict, so far as is concerned the evidentiary phase of the case.

[3] Id.—Improbable or Unbelievable Evidence—Findings—Appeal. Where, upon its face, the evidence from which findings necessary to uphold the judgment have been drawn is so weak and unsatisfactory as to justify the conclusion that it, as a matter of

3.  See 2 Cal. Jur. 937; 2 R. C. L. 208.

law, affords no support to such findings, or is inherently improbable, and, therefore, unbelievable upon its face, a court of review may set aside the findings.

[4] ID.—CONFLICTING EVIDENCE—FINDINGS—APPEAL.—The rule that a court of appeal is bound by the decision of the trial court upon the facts where the evidence is in substantial conflict upon such facts applies as well where such conflict arises in the testimony given by the witnesses for the party victorious in the trial as where the conflict arises between the testimony given by the witnesses of one of the parties and that given by the witnesses testifying for the opposing party.

[5] ID.—WITNESS FALSE IN PART—WEIGHT OF TESTIMONY—APPEAL.—The doctrine that "a witness false in one part of his testimony is to be distrusted in others" is a rule designed for the guidance of the triers of the questions of fact at *nisi prius* in passing upon and determining the credulity of a witness whose testimony they may find has been in part false, and the entire testimony of such witness may be rejected, but such rule cannot be invoked in a court of appeal on a review of the facts.

[6] ID.—EXCESSIVE DAMAGES—JUDGMENT—APPEAL.—In this action for damages because of injuries suffered by plaintiff wife while alighting from defendants' taxicab, the judgment for three hundred dollars to plaintiffs for damages, as in compensation for the damage actually sustained over and above the doctor's bill and the cost of medicine, appeared to constitute a reasonable admeasurement, in terms of money, of the damages which would at least approximately compensate plaintiffs for the injuries and the consequences to them following therefrom, and the appellate court could not say the judgment was excessive.

[7] ID. — PAIN AND SUFFERING — MEASURE OF DAMAGES — JUDGMENT — APPEAL.—In such cases, it is always difficult to fix the amount which should be allowed for the element of pain and suffering, present and future, and unless it can be said, as a matter of law, that the damages awarded by the verdict or the judgment are so far disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice and raise the presumption that they were the result of passion or prejudice, rather than of honest and sober judgment, interference with the verdict or the judgment by a court of review is forbidden.

[8] ID.—EXCLUSION OF DEFENDANT FROM COURTROOM—WAIVER OF OBJECTION.—In this action for damages for negligence, on the opening of the case counsel for defendants having stated that "for

---

4. See 2 Cal. Jur. 930.
5. See 10 Cal. Jur. 1148.
7. See 8 Cal. Jur. 834.

the reason that there is a conflict of evidence we would like the witnesses to testify out of each other's hearing," and the court thereupon having made a general order excluding the witnesses from the courtroom, but the defendants not having been specifically commanded to depart from or remain outside the courtroom until required to give their testimony, and the attention of the court not having been called to the fact that one of the defendants, apparently upon the mistaken belief that the order of expulsion included him, also absented himself from the courtroom during the presentation of plaintiffs' case, counsel for defendants could blame no one but himself for the act of his client in absenting himself from the courtroom.

[9] ID.—DUTY TO MAINTAIN DECORUM—DISTURBANCE OF PROCEEDINGS —REMOVAL OF DEFENDANT.—A court has the right, and it is its duty, to maintain decorum in the courtroom when a trial or other judicial proceeding is under way therein, and may to that end require all present to remain orderly and quiet; and where one of the defendants and another party are speaking in a tone of voice sufficiently audible to disturb the proceedings and the court interrupts the examination, saying, "Stop your talking back there, Gentlemen. Don't look at me that way. Leave the room," whereupon said parties leave the room, but there is no showing that defendants were in any way prejudiced by the action of the court, reversible error will not be held to have been committed.

[10] ID.—INCREDIBLE TESTIMONY OF PLAINTIFF—JUDGMENT—APPEAL.— In an action for damages because of injuries suffered by plaintiff wife while alighting from defendants' taxicab, it cannot be held that the trial court committed an abuse of discretion in giving judgment for plaintiffs where the testimony of the plaintiff wife as to how the accident happened was, upon its face, plainly incredible, but the testimony of other witnesses was sufficient to show that the accident and the resulting injury to said plaintiff were directly due to the negligence of defendants' driver. (On denial of rehearing.)

[11] ID.—MATERIALITY OF TESTIMONY—INSUFFICIENT FOUNDATION FOR OBJECTION—APPEAL.—Where the record on appeal merely shows that defendant called a certain witness, apparently for the purpose of proving the statements made on a certain occasion, but the question propounded to the witness does not disclose the nature of the testimony which counsel intended to elicit from the witness, or whether, whatever the nature of the testimony thus proposed to be introduced, it was material to any issue in the case, and the remarks of the trial judge would imply that he was familiar with the character thereof and that he considered it as not being material to any issue in the case, and following such remarks the

witness was withdrawn without further questioning, the appellate court cannot say whether the testimony of said witness would or would not have been material. (On denial of rehearing.)

(1) 10 C. J., p. 1059, n. 49. (2) 4 C. J., p. 883, n. 33. (3) 4 C. J., p. 880, n. 97, p. 881, n. 6. (4) 4·C. J., p. 883, n. 33. (5) 4 C. J., p. 844, n. 66; 40 Cyc., p. 2586, n. 51, p. 2588, n. 53. (6) 17 C. J., p. 1112, n. 79. (7) 4 C. J., p. 872, n. 19. (8) 3 C. J., p. 828, n. 70; 4 C. J., p. 755, n. 8; 38 Cyc., p. 1299, n. 20. (9) 4 C. J., p. 950, n. 69; 38 Cyc., p. 1297, n. 91 New. (10) 4 C. J., p. 844, n. 66. (11) 3 C. J., p. 825, n. 53; 38 Cyc., p. 1333, n. 3.

APPEAL from a judgment of the Superior Court of Sutter County. W. A. Anderson, Judge. Affirmed.

The facts are stated in the opinion of the court.

John R. Connelly for Appellants.

Charles A. Wetmore, Jr., Crofton & Wetmore and Frank A. Duryea for Respondents.

HART, J.—This is an action for personal injuries alleged to have been received by the plaintiff Lydia Pedrow through and by the negligence of the defendants. The complaint alleges the facts in detail, and prays for damages—damage to Lydia Pedrow, damage to Thomas J. Pedrow, and for doctor's bill and medicine, each separately stated—in the total sum of $1,750. The answer specifically denies the allegations of the complaint and sets up as a special defense contributory negligence.

The cause was tried by the court without a jury and plaintiffs were awarded judgment in the sum of $369.

The defendants appeal from the judgment, supporting the same by a transcript of the proceedings taken at the trial as authorized by section 953a of the Code of Civil Procedure.

The principal point is that there is no evidence which sufficiently supports the findings.

The plaintiffs, as the title indicates, are husband and wife, and, at the time the injuries herein complained of were sustained, resided in Yuba City, in Sutter County. The defendant Federoff was at said time the owner of a taxicab business in the city of Marysville and locally en-

gaged in the transportation of passengers from place to place for hire, and at the same time the defendant O'Neil was in the employ of Federoff as a taxicab driver. Yuba City is situated a mile or less from the city of Marysville, in Yuba County, the two places being divided by the Feather River, across and over which a bridge for the use and accommodation of the traveling public is maintained.

The facts as herein stated will be based largely upon the testimony of the plaintiff Lydia Pedrow.

The home of the plaintiffs, at the time the injuries were received by Lydia Pedrow, was at 143 Kiley Avenue, in Yuba City. In front of their home was an embankment, which sloped perceptibly toward the curbing directly in front of the residence.

At and before the day on which the accident occurred both plaintiffs were employed at a laundry in the city of Marysville, her duties being those understood as a "press" worker. The elder of the two daughters of the plaintiffs was, at the time Lydia Pedrow received her injuries, and had been for a period prior thereto, attending school in the city of Marysville and the younger child was then attending school at Yuba City.

Early on the morning of the twelfth day of May, 1924, Lydia Pedrow left her home in Yuba City for Marysville, for the purpose of purchasing a can of oil to be used in oiling a vacuum cleaner. She was accompanied by her two daughters and her husband, the latter going to Marysville for the purpose of resuming his daily labors at the laundry above spoken of. They arrived in Marysville shortly before 8 o'clock A. M. and, after making the purchase of the oil, she started on her return home. This was about 8 o'clock. She noticed a taxicab standing at a corner of a street in Marysville, not far distant from where she stood when she first observed the cab, and, being anxious to get back to her home as soon as possible because of the fact that her younger daughter was required to report at school in Yuba City at the hour of 8:30 A. M., she sent one of the girls to the taxi driver to inquire what his charge would be to convey the three to Yuba City. The charge for the service being satisfactory, she and the two girls entered the cab and were driven to Yuba City and directly to their home. The cab was stopped in front of her residence, the door

was opened (she stated by the driver), the two children
alighted, and, as she was in the act of leaving the cab, her
left foot on the running-board and the right still inside
the cab—her body half in and half out of the cab, as she
explained it—the machine suddenly started, or, as she sev-
eral times described it, started to roll down the embank-
ment, or, as she also once described it, the cab made a
movement in the nature of a "jerk," and she was by said
jerk or movement thrown to the ground. The driver, one
O'Neil, without assisting or offering to assist her to her feet,
immediately started away and was soon out of her sight.
She stated that she was unable, unaided, to get on her feet,
but, after some effort, finally succeeded in getting into her
house and on to a couch by crawling on her hands and
knees. On getting into the house she began to realize that
her left knee had been injured, as she was suffering much
pain in the region of the knee-cap. She remained on the
couch, unable to use her left leg, until her husband returned
from his work in the late afternoon, when he sent for a
physician, who called at the house, examined the injured
limb, found a bruise on the knee, which was swollen, and
some fluid in the joint. He administered temporary treat-
ment of the injured limb for the purpose of alleviating
the suffering of Mrs. Pedrow, as far as thus it could be
done under the circumstances. On the following morning
the doctor caused the patient to be conveyed to his office,
where he took an X-ray plate of the injured knee. The
doctor, by the aid of the X-ray plate, discovered a "possible
fracture of the upper end of one of the small bones of the
left leg" (the "tibia," as technically the doctor described
the bone), "with an injury to the knee joint sufficient to
cause a slight amount of fluid in there. I took her home,"
proceeded the doctor, "and put a cast on her leg and thigh,
immobilized the knee. . . . I think she had the cast on for
three or four weeks." The doctor stated that the main in-
jury to the leg was what is called an "impacted fracture,"
further explaining that "an impacted fracture is not a
bone broken off but just mashed in." He stated that it
would be difficult in such a case to venture a definite prog-
nosis as to the length of time in the future during which
the patient would suffer pain from the injuries she had
received.

After the limb was put in a cast, as above explained, Mrs. Pedrow was able to go about on crutches. From the time she was injured until the time she dispensed with the use of the crutches a period of about six weeks was covered.

Both plaintiffs testified that, for several weeks after Mrs. Pedrow was hurt, the husband was compelled to perform the household duties of their home. These he would attend to in the early morning before going to work and in the evening on returning from work. The elder daughter was required to remain home from school to assist her mother until the latter's injured limb was removed from the cast. Mrs. Pedrow testified that she had suffered more or less pain from the injuries from the time she received them down to the time of the trial, a period of over five months from the time she was hurt. Particularly, in damp weather, she said, was the pain noticeable. She received as compensation for her work at the laundry, when employed, the sum of $19.50 per week.

The explanation by Mrs. Pedrow of the manner in which she fell or was thrown to the ground was in part corroborated by her daughter (the elder of the two) and a Mrs. Mack, a neighbor, whose house was next to that of the Pedrows. Mrs. Mack stated that she was out on her porch engaged in sweeping when the cab stopped in front of the Pedrow home. The Pedrow children first alighted from the cab, and then, as Mrs. Pedrow was attempting to do likewise, one foot being on the running-board and the other on the inside of the car, and her body being "half in and half out" of the car, the cab made a sudden move, throwing Mrs. Pedrow to the ground. She stated that the driver was in his seat in the cab when it made the move.

The testimony of the driver of the cab, O'Neil, was directly contradictory to the testimony of Mrs. Pedrow as to the manner in which she fell to the ground and was to the effect that the cab was standing perfectly still when Mrs. Pedrow left the car and in doing so fell to the ground. O'Neil testified that the moment that he reached a point directly in front of the Pedrow home, he stopped the motor and that the car did not move, nor was it moved after he stopped it and until he started on his return to Marysville. He stated that Mrs. Pedrow fell after her feet struck the

ground, there being there at the time "a lot of rubbish," etc., into which she stepped. He said that he assisted Mrs. Pedrow to her feet and that she thereupon went into the house without apparent difficulty or inconvenience. Another witness, a lady then living near the Pedrow home, stated that she saw Mrs. Pedrow leave the cab and that the car did not move nor was it moved while she (Mrs. Pedrow) was in the act of getting out of the machine. That witness further testified that the driver of the cab assisted Mrs. Pedrow to her feet and that she (Mrs. Pedrow) walked into her house, but was supported by her two children. And as to how Mrs. Pedrow got into the house after she was hurt, her testimony and that of her elder daughter are not altogether in harmony.

Certain witnesses for the defense testified that Mrs. Pedrow, prior to bringing this action, and shortly after the accident, made certain statements as to the manner in which the accident occurred which, if true, would be inconsistent with her testimony given at the trial. This impeaching testimony, however, she contradicted, positively declaring it to be a fabrication.

[1] It will not be disputed that if, as Mrs. Pedrow testified, the cab made a sudden jerk or lurch or moved while the driver was still in his seat at the wheel and she, exercising due care when in the act of leaving the cab, was thrown to the ground and received the injuries by reason of such moving or lurching of the cab, then, manifestly, the court, believing her story, was legally authorized to find that the proximate cause of her injuries was the negligence of defendant and, consequently, not due to negligence on her part. [2] It is to be conceded that, upon the face of the record, there is a conflict in the evidence upon the question of how the accident resulting in the injuries happened, but it is a substantial conflict. In such a situation as to the evidence, this court, as is well understood, is without legal right to interfere with the verdict, so far as is concerned the evidentiary phase of the case. [3] It is only where, upon its face, the evidence from which findings necessary to uphold the judgment have been drawn is so weak and unsatisfactory as to justify the conclusion that it, as a matter of law, affords no support to such findings, or is inherently improbable, and, therefore, unbelievable

upon its face, may a court of review set aside the findings, and, as stated, this we cannot say as to the evidence upon which the findings in this case are founded.   [4]   The rule that a court of appeal is bound by the decision of the trial court upon the facts where the evidence is in substantial conflict upon such facts applies as well where such conflict arises in the testimony given by the witnesses for the party victorious in the trial as where the conflict arises between the testimony given by the witnesses of one of the parties and that given by the witnesses testifying for the opposing party.   [5]   It is suggested, however, that Mrs. Pedrow's own testimony was not only shown to be false in part, but that the court, in deciding the case, in effect so stated. This has reference to her declaration that she had worked for the laundry in Marysville for a period of two or three years prior to the time when she was hurt, and also that she was unable to return to her employment for about three or four weeks after she was injured, and then resumed her work while on crutches, whereas, the proprietor of the laundry, testifying from his time-book in which a record of the days, weeks, or months during which his employees worked at the establishment was kept, stated that, about two years prior to the day she was hurt, both Mrs. Pedrow and her husband worked for him in his laundry, but that they left the laundry and were gone about two years; that they returned after that period of time and were re-employed by him and put to work in the laundry in the latter part of April, 1924; that, within a few days after she was injured, she returned to her work.   With the integrity of her testimony thus shaken, it was still with the trial court to determine whether her testimony as to the manner in which she received her injuries was true or false.   The doctrine that "a witness false in one part of his testimony is to be distrusted in others" (Code Civ. Proc., sec. 2061, subd. 3) is a rule designed for the guidance of the triers of the questions of fact at *nisi prius* in passing upon and determining the credibility of a witness whose testimony they may find has been in part false.   "The rule merely means that where the witness is found to have sworn falsely in a certain material part of his testimony, his entire testimony may for that reason be rejected.   But no one will attempt to challenge the right of a jury or a judge, trying the facts,

to believe and credit certain parts of the testimony of a witness who has been shown to have sworn falsely as to certain other material parts thereof. The rule is in any event one which cannot be invoked in a court of appeal on a review of the facts." (*Brandt* v. *Krogh,* 14 Cal. App. 39, 48 [111 Pac. 275]; *Robinson* v. *Robinson,* 159 Cal. 203 [113 Pac. 155].)

[6] We cannot say that the judgment is excessive. The doctor testified that for the professional services rendered Mrs. Pedrow by him his fee amounted to $60, and it was shown that the plaintiffs paid $9 for medicines to be used and which were used in the treatment of Mrs. Pedrow's injuries. The court, in deciding the case, stated that it "will allow $369.00 damages—that includes the doctor's bill and medicine," and, as seen, rendered and caused to be entered judgment in accord therewith. There is thus left the sum of $300 to plaintiffs for damages as in compensation for the damage actually sustained. That sum appears to constitute a reasonable admeasurement, in terms of money, of the damages which will at least approximately compensate plaintiffs for the injuries and the consequences to them following therefrom. There was the loss of wages for several weeks, also the pain and suffering Mrs. Pedrow endured when the injuries were still fresh and at the time of the trial, which took place something over five months after the accident happened, and possible future suffering. [7] It is, of course, always difficult in cases of this character to fix the amount which should be allowed for the element of pain and suffering, present and future, but unless it can justly be said, as a matter of law, that the damages awarded by the verdict or the judgment "are so far disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice and raise the presumption that they are the result of passion or prejudice, rather than of honest and sober judgment," interference with the verdict or the judgment by a court of review is forbidden. (8 Cal. Jur., sec. 88, p. 834, and cases named in the footnote.) As before indicated, under the state of the record as to the evidence in this case, we cannot so hold here.

The defendant complains of the action of the court in excluding from the courtroom during the progress of the trial

the defendants W. R. Federoff and J. W. O'Neil. [8] On
the opening of the case, counsel for defendants stated: "For
the reason that °there is a conflict of evidence we would
like the witnesses to testify out of each other's hearing."
The record then shows the following in parentheses: "At
this time the witnesses are excluded from the courtroom."
While the defendants were putting on their case the follow-
ing occurred, as the record shows: "Mr. Connelly (attorney
for defendants)—I see that one of the defendants was ex-
cluded with the rest of the other witnesses. (J. W. O'Neil
is called into the room.)"

The record does not show that, in making the order ex-
cluding the witnesses, each of the latter was first called by
name and thereupon directed by the court to remain out-
side the courtroom while the trial was going on and until
called to testify, and it is, therefore, to be assumed that
O'Neil was not specially commanded to depart from and
remain outside the courtroom until required to give his
testimony, and, of course, being a party to the action, was
not, and could not have been so intended to be, subject to
the order of exclusion. Counsel for defendants better than
the judge knew who O'Neil was—whether he was the de-
fendant O'Neil or only a witness having no interest in the
case other than as a witness—and, knowing that a party
to an action is entitled to remain in the court during the
trial of such action and aid in and observe the progress
thereof (*Chester* v. *Bower,* 55 Cal. 46, 48), it was his duty
to protect the right of O'Neil in that respect by calling
the attention of the court to the fact that he (O'Neil) was
a party to the suit. Having failed to take that course,
counsel can blame no one but himself for the act of O'Neil
in absenting himself from the courtroom under the mistaken
belief that the order of expulsion included him. But, aside
from these considerations, it is clear, from the record, that
defendants suffered no prejudice from O'Neil's absence from
the courtroom while the trial was in progress, as (so the
record would indicate) his absence was not discovered, or
at least it was not suggested, until the plaintiffs had rested
their case and the defendants were about to introduce their
defense. Evidently counsel for defendants had found no
use for O'Neil's presence while the plaintiffs were intro-
ducing their proofs or when their witnesses were undergoing

cross-examination by him, otherwise, undoubtedly, counsel would have called for O'Neil.

When counsel for plaintiffs were about to take up the cross-examination of the defendant O'Neil, the court interrupted, addressing the defendant Federoff and one Winship, the latter, a witness for plaintiffs, having already testified, and saying: "Stop your talking back there, Gentlemen. Don't look at me that way. Leave the room." Thereupon, so the record states, Mr. Federoff and Mr. Winship left the room. The defendants assign the action of the court in thus ordering Federoff to leave the courtroom as misconduct prejudicial to the rights of the defendants. It is to be presumed that, when the court ordered the parties named to "stop talking," the latter were speaking in a tone of voice sufficiently audible to disturb the proceedings. **[9]** A court has the right—indeed, it is its duty—to maintain decorum in the courtroom when a trial or other judicial proceeding is under way therein, and, of course, may to that end require all present to remain orderly and quiet, and in ordering the individuals named not to carry on a conversation in the courtroom while the trial was in progress, the judge did nothing more than what it was his duty to do to preserve proper demeanor on the part of those in attendance upon the trial and thus the dignity with which trials and proceedings in courts of justice should always be conducted. It is not, however, pointed out by counsel how or in what way, if at all, the defendants were prejudiced by the action of the court in ordering and requiring Federoff to depart from the courtroom, and, from the record itself, as it is presented here, we cannot say that prejudice to defendants followed from the circumstance. Federoff was not present when the accident occurred, so he could have been of no assistance to his attorney in the latter's examination and cross-examination of the witnesses as to that matter. He was later called into the courtroom and testified to statements alleged to have been made by Mrs. Pedrow after the accident inconsistent with her testimony as to how it happened. Besides, there was no jury to be prejudiced by the action of the court, if, indeed, such a circumstance would or might have the effect of causing prejudice to arise in the minds of the intelligent and fair-minded men and women of whom it is to be presumed trial

juries are usually constituted, nor is it made to appear that the judge's decision was affected thereby. To the contrary, the record shows that the judge was scrupulously careful in weighing the testimony and reaching a conclusion therefrom, for he did not base his decision entirely on the testimony of Mrs. Pedrow. He declared that, but for testimony given for plaintiffs by other witnesses than Mrs. Pedrow herself, he would be disposed to order judgment against plaintiffs. He stated this in deciding the case, saying that it was his opinion that the plaintiffs tried to "squeeze the damages up" by testifying that Mrs. Pedrow was forced to remain from her employment for a longer period than the real truth disclosed. He based said opinion upon the testimony of the proprietor of the laundry at which she had been, and at the time she was injured was, employed to the effect that she returned to her labors some two weeks prior to the time at which both plaintiffs testified that she resumed her work there.

There are some other criticisms of the record, but in these, as in other assignments to which attention has herein been given, there is no substantial merit.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 17, 1926, and the following opinion then rendered thereon:

HART, J.—Two points are urged for a rehearing of this cause. [10] The point first made in the petition was practically considered and disposed of in the original opinion. It is this: That the testimony of Mrs. Pedrow is, upon its face, plainly incredible and that, in deciding the case, the trial court should have attached to it no weight whatsoever and that, in giving it credit, as presumptively it did, it abused its discretion. It is to be conceded that Mrs. Pedrow made one statement while testifying which does not bear the earmarks of truth, and that was that, while in the act of alighting from the cab, she at the same time handed to the driver, still sitting in the taxi and at the wheel, the fare for conveying her and her daughter to

Yuba City. This statement appears to be incompatible with her testimony that, on attempting to leave the car, and while her body was outside the cab, she was thrown to the ground by reason of a lurch or sudden movement of the taxi. But we paid no specific attention to that apparent inconsistency in the former opinion because, as shown in said opinion, the record showed that the judge, in deciding the case, stated that he would be inclined to give defendant judgment if there were before him no other testimony than that of Mrs. Pedrow upon which the court could justifiably predicate a judgment for plaintiffs. Thus, it would clearly appear to be true, the judge discredited, to some extent at least, Mrs. Pedrow's testimony. And, as shown in the former opinion, there was testimony other than that of Mrs. Pedrow sufficient to show that the accident and the resulting injuries to Mrs. Pedrow were directly due to the negligence of the taxi driver. It follows that, without considering Mrs. Pedrow's testimony involving her version of the circumstances under which the accident happened, there exists substantial evidentiary support to the decision, and the evidence presented by defendants as in impeachment of the case of plaintiffs as made by the proofs, merely had the effect of producing a substantial conflict in the evidence as a whole which it was the sole function of the trial court to resolve.

[11] The second point stressed by counsel in support of the petition here is that the court erroneously refused to receive testimony the particular object of which is not disclosed by the record, but which counsel declares in his briefs and the petition here would have the effect of impeaching the testimony of Mrs. Pedrow—that is, that it would show that she had at some other time made statements as to the manner in which or the circumstances under which the accident occurred which were in material particulars inconsistent with her testimony before the court. One L. B. Smith was called by defendants for that purpose, and the following thereupon occurred: Q. (By counsel for defendants): "Mr. Smith, were you in the party that went over in front of Mr. Federoff's place some time the latter part of May, on the evening when Mr. Federoff and myself were there? A. Yes, sir. The Court: Are you going to testify, too? Mr. Connelly (counsel for defendants): No, I won't. The

Court: If you don't mind, I don't think this will have any effect on me whatever. Mr. Connelly: It is only as to statements made. The Court: I am not paying any attention to them. Mr. Connelly: Then that is all.'' Whereupon the witness was withdrawn. It cannot be determined from the question propounded to the witness what the nature of the testimony was that counsel expected to elicit from the witness, or whether, whatever the nature of the testimony thus proposed to be introduced, it was material to any issue in the case. Even counsel's explanation to the trial court of what the testimony would be afforded no enlightenment upon that proposition. He merely stated that it related ''only as to statements made,'' of what character or by whom made was not by him made to appear. The trial judge's remarks regarding the proffered testimony would imply that he was familiar with the character thereof, and, assuming that he was, it may also be assumed, from the record as it stands with regard to the matter, that he considered it as not being material to any issue in the case. But, however that may be, it is clear that we cannot, from the record, say whether it would or would not be material. The counsel should have propounded a question to the witness in such form as that it would have indicated the nature of the testimony which he expected and desired the witness to give, in which case an exception to a ruling excluding the testimony, if it thus was shown to be material to any of the issues of the case, would have justified and facilitated a review of the ruling by this court. ''Where the question does not show on its face whether or not it is material, the questioner, in order to reserve an exception, must formally reframe the question so that its materiality is apparent.'' (*People* v. *Singh,* 182 Cal. 457, 482 [188 Pac. 987, 998] ; *Snowball* v. *Snowball,* 164 Cal. 476 [129 Pac. 784] ; 9 Ency. of Evidence, 170; *People* v. *Bryant, post,* p. 375 [246 Pac. 815].)

The petition for a rehearing must be denied, and it is so ordered.

Finch, P. J., and Plummer, J., concurred.