[L. A. No. 22228.   In Bank.   July 11, 1952.]

TAUL C. CHAN, as Special Administrator, etc., et al., Plaintiffs and Appellants, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation), Defendant and Appellant; MELVIN E. VAUGHAN, SR., et al., Respondents.

Harry M. Irwin and V. P. Lucas, for Plaintiffs and Appellants.

Lawrence L. Otis, Gilbert E. Harris, James F. Healy, Jr., and Harold Arman for Defendant and Appellant.

J. Q. Gilchrist for Respondents.

SPENCE, J.—Melvin E. Vaughan, Sr., and Rozelle Rainey Vaughan agreed to purchase real property from Chin Ott Wong and Quan Shee Wong. The Vaughans deposited certain money in escrow with the Title Insurance and Trust Company (hereinafter called the Title Company). The Wongs, claiming that "time was of the essence" of the agreement and that the Vaughans had defaulted in their payments, brought this action seeking a forfeiture of the escrow money. The action originally was commenced only against the Title Company as the escrow holder. Upon the latter's motion, the Vaughans were substituted as defendants and the Title Company was discharged from further liability except that it was ordered to retain the escrow money for disbursement as "ordered and adjudged by a final judgment." Trial of the action resulted in a judgment for the Wongs, which judgment was reversed on the ground that the "time is of the essence" provision had been waived, and no notice fixing a new date for performance had been given by them. (*Chin Ott Wong* v. *Title Ins. & Trust Co.,* 89 Cal.App.2d 183 [200 P.2d 541].) Thereafter Chin Ott Wong died and Taul C. Chan as special administrator of his estate was substituted as party plaintiff. The second trial resulted in a judgment for the Vaughans based upon their cross-complaint for return of the escrow deposit. The judgment ran against plaintiffs and the Title Company for payment of the full escrow deposit plus interest calculated from the day the trial court found the Title Company, after entry of the first judgment, had paid such deposit to the Wongs. From such judgment, plaintiffs and the Title Company appeal.

Plaintiffs contend that the evidence does not support the findings, and that the issue of damages was improperly considered a factor in determination of the rights of the parties. The Title Company, as custodian of the escrow deposit, attacks the propriety of the award only insofar as it allows interest prior to the date of final judgment. Plaintiffs also make this same objection. An examination of the record discloses that the findings and judgment are not vulnerable to attack except as to the interest provision. Accordingly, we conclude that such provision should be deleted from the judgment and as so modified, the judgment should be affirmed.

In April and May, 1946, the Wongs agreed to sell and the Vaughans agreed to buy certain real property for the total price of $176,254.15. An escrow was opened with the Title Company, wherein the Vaughans were to deposit by May 29, 1946, the sum of $35,000 and a trust deed and promissory note for the balance, $141,254.15, payable at the rate of $30,000 per year. Prior to this date the Vaughans paid $5,000 into the escrow, plus an agreed tax payment of $77.45, and deposited the trust deed and note duly executed; and the Wongs deposited their grant deed conveying to the Vaughans the property involved. The escrow instructions contained a "time is of the essence" clause and provided that in the event the escrow was not in "condition to close by May 29, 1946, any party who then shall have fully complied with his instructions may, in writing, demand the return of his money and/or property." (The accompanying agreement between the parties contemplated the erection of a substantial building on the property by the Vaughans.)

The escrow was not in condition to be closed by May 29th, but on June 18th the Title Company notified the Vaughans that on receipt of the unpaid balance of $30,000, it was ready to issue its policy of title insurance. On July 1st, the Vaughans paid an additional $5,000 into escrow. On July 15th they executed and delivered to the Title Company, with the Wongs' approval, amended instructions directing the company to endorse interest paid on the note to June 18, 1946, in lieu of the previous instructions to endorse interest paid thereon to date of the close of escrow.

No more money was paid into escrow, and this action was filed on August 27, 1946, by the Wongs to declare a forfeiture of the escrow money. They prevailed on the trial, but the judgment was reversed in *Chin Ott Wong* v. *Title Ins. & Trust Co., supra,* 89 Cal.App.2d 183, with the court

stating at page 188 that their "complaint affirmatively shows that the transaction was still pending with plaintiffs' approval on July 15th which is long after May 29th the date originally agreed upon by the parties within which the agreement was to have been performed. The complaint contains no allegation that a later and different date was agreed upon by the parties to which the 'Time is of the essence' condition was to apply. . . . It is well settled that 'where time is made of the essence of the contract for the payment of money and this covenant has been waived by the acceptance of money after the same is due, with knowledge of the facts, such conduct will be regarded as creating such a temporary suspension of the right of forfeiture as could only be restored by giving a definite and specific notice of intention to enforce it.' "

Thereafter the Wongs amended one paragraph of their complaint to allege that on August 1, 5, and 9, 1946, they demanded of Vaughan, Sr., payment of the total sum due in the escrow; and that on August 9, 1946, they notified him that "thereafter they intended to and would require strict compliance by [him] with the conditions of his agreement in said escrow instructions and that in the event that he . . . failed to pay said total sum of $35,077.45 on or prior to August 26, 1946, [they] intended to and would thereupon strictly enforce their rights under said escrow instructions and would thereupon file an action in court for the enforcement thereof." The Vaughans filed an answer to the amended complaint and a cross-complaint for money had and received. The case was tried and submitted. Thereafter the court, upon its own motion, vacated the order of submission and set a date to take "further evidence upon the issue of the damage suffered by plaintiff[s] and the price for which the property was sold, and to consider the amending of the pleadings to conform to the proof." When the matter came on for hearing, plaintiffs objected upon the ground that the court had no jurisdiction to reopen the cause after submission and that the introduction of any further evidence on the matter of damages would be beyond the issues as framed by the pleadings. The objection was overruled. Plaintiffs declined to submit additional evidence on the damage question or to amend their pleadings. The Vaughans, however, introduced evidence showing that the property involved had been sold for more than the contract price with the Wongs.

Thereupon the court found that plaintiffs had sustained no damage by reason of the Vaughans' failure to complete the escrow transaction in question. Accordingly, judgment was entered against plaintiffs on their complaint and in favor of defendants Vaughan on their cross-complaint as above indicated.

Plaintiffs first challenge the sufficiency of the evidence to support the finding that while plaintiffs' agent Irwin and Vaughan, Sr., had various telephone conversations between May 29 and August 28, 1946, regarding proposed modifications of the escrow instructions and the payment of the sum due thereon, "at no time did the Wongs, or their agent Irwin, inform Vaughan, Sr., that they would insist upon a strict performance of the provision in the Escrow Instructions making time the essence thereof," nor "did they give to Vaughan, Sr., a definite notice whereby another date for the performance of the contract was fixed."

Plaintiffs' agent Irwin testified that according to the notations in his office datebook, he had telephone conversations with Vaughan, Sr., regarding completion of the escrow on July 8th, July 30th, and August 5th; and that on August 9th Vaughan telephoned and Irwin told him that Mr. Wong would not wait any longer for performance of the contract, that if Vaughan did not pay "the balance in full in escrow by Monday, August 26," Mr. Wong would "file suit . . . immediately thereafter to enforce whatever rights he may have under the purchase contract" and would "demand strict compliance."

Vaughan, Sr., testified that prior to the commencement of this action he had never talked personally or by telephone to Irwin or the Wongs. He further testified that Irwin at no time had informed him that he would be required to comply with the terms of the escrow instructions by August 26th; that he, Vaughan, left Los Angeles for Catalina on July 31, 1946, and remained there until August 16, 1946, on a job of installing certain electrical equipment; and that during that period in Catalina he had not talked to Irwin or anyone else by telephone. Vaughan, Jr., as a witness on behalf of defendants, testified that he was associated in the electrical business with his father; that he had no interest in the property transaction in question; that his father was in Catalina for the length of time mentioned, and that dur-

ing that period when Irwin telephoned for his father, he told Irwin that his father was out of town but did not say where he had gone because that was not his business practice. Defendants Vaughan introduced into evidence certain timecards showing work done in Catalina by Vaughan, Sr., between August 1 and 16, 1946, and a steamship freight bill showing the shipment of Vaughan's tools from Catalina to Los Angeles on August 16, 1946.

■ Questions as to the credibility of the witnesses and the weight to be given their testimony are for the trier of the facts, who may disbelieve a portion of a witness' testimony and yet believe other portions thereof. (*Robinson* v. *Robinson*, 159 Cal. 203, 204 [113 P. 155] ; *Pedrow* v. *Federoff*, 77 Cal.App. 164, 172-173 [247 P. 212] ; also *Turner* v. *Whittel*, 2 Cal.App.2d 585, 588 [38 P.2d 835].) While the court here apparently believed Irwin's testimony that from time to time between May 29 and August 28, 1946, he had telephone conversations with Vaughan, Sr., the court was not bound thereby to accredit also the substance of those conversations as declared by Irwin. The only conversation claimed to constitute specific notice and to fix a definite time for performance of the contract was that of August 9th. Vaughan, Sr., not only denied that he had ever been given notice to perform by another certain date, but stated that on said August 9th, the day Irwin claimed to have given the required notice, he, Vaughan, was in Catalina and was not in communication with anyone in Los Angeles by telephone. ■ Confronted with this conflict in the evidence, it was for the trial court to determine whether or not Vaughan, Sr., had ever been given definite notice to perform the contract by another specific date. The trial court found that no such notice had been given. Such finding is sustained by the evidence and is binding upon this court. (*Rolland* v. *Porterfield*, 183 Cal. 466, 470 [191 P. 913].)

Most of the remaining contentions of plaintiff need not be considered in view of our conclusion that the evidence sustains the finding that no notice to perform the contract by a specific date was given. ■ The complaint and the evidence clearly show that the transaction between the parties was still pending on July 15, 1946, with plaintiff's approval. This was long after the time limit set in the escrow instructions, and the "time is of the essence" clause contained therein must therefore be deemed to have been waived.

■ Any right of forfeiture which may have existed was thus suspended until definite notice to perform the contract by a specific date was given. (*Chin Ott Wong* v. *Title Ins. & Trust Co., supra,* 89 Cal.App.2d 183, 188, and cases there cited.) In the absence of such notice plaintiff cannot, therefore, enforce a right of forfeiture, and the trial court properly determined that the Vaughans were entitled to prevail on their cross-complaint for restitution of the escrow payments.

■ However, plaintiffs and the Title Company properly maintain that it was error to allow interest on the escrow payments. The judgment provides for the payment of interest from October 14, 1947, purportedly the date when the Title Company paid the escrow money to the Wongs. The record does not show any specified date when the Title Company in fact made such payment, but only that it was made after entry of the judgment in favor of the Wongs on the first trial. In refuting the Vaughans' claim that such payment by the Title Company constituted a conversion of the money, with interest chargeable from the date thereof (Civ. Code, § 3336), plaintiffs in their brief state that after reversal of the first judgment, they "returned said money to the Title Company who now retains it as custodian" pending final judgment in this case. These considerations, however, have no material significance. The court's order substituting the Vaughans as defendants in the action expressly discharged the Title Company from all liability to the parties except that all money and documents involved therein were to be retained by it and "paid, disbursed, delivered and disposed of . . . as may be ordered and adjudged by a final judgment." In their cross-complaint the Vaughans only sought a refund of the amount of their escrow payments, $10,077.45, without any claim of interest, and the case was tried on the theory that the Title Company, as custodian of such principal sum, was only obligated to pay it to the prevailing party on disposition of the conflicting claims thereto by a "final judgment." Under the circumstances, the court erred in providing for the payment of interest prior to the time that the principal sum became due (*Upton* v. *Gould,* 64 Cal. App.2d 814, 817 [149 P.2d 731], and cases cited), and to that extent the judgment in favor of the Vaughans is excessive.

The judgment is therefore modified by striking therefrom the provision for interest on the sum of $10,077.45, and as

260

so modified, the judgment is affirmed. Defendants and cross-complainants Vaughan will recover their costs on appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J., Dissenting.—Upon the grounds stated by the District Court of Appeal in an opinion authored by the late Justice Wilson and concurred in by Presiding Justice Moore and Justice McComb (reported at 237 P.2d 53) I would reverse the judgment.

Appellants' petition for a rehearing was denied August 7, 1952. Schauer, J., was of the opinion that the petition should be granted.