Filed 12/13/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E079069 |
| v. | (Super.Ct.No. INF2101604) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| ARMANDO RODRIGUEZ MENDEZ, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ. Valerie A. Navarro, Judge. Petition granted.

Michael A. Hestrin, District Attorney, and Richard J. Sachs, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Steven L. Harmon, Public Defender, and Jason M. Cox, Deputy Public Defender, for Real Party in Interest

Taylor L. Huff as Amicus Curiae on behalf of Real Party in Interest.

The superior court granted real party in interest Armando Rodriguez Mendez's motion under Penal Code section 995 and dismissed an assault with a deadly weapon charge against him. (Undesignated statutory references are to the Penal Code.) The People petition for a writ of mandate to compel the superior court to reinstate the charge. We grant the petition.

## BACKGROUND

### A. *The Charges*

According to the People's verified petition, the People filed a felony complaint in September 2021 charging Mendez with one count each of felony assault with a deadly weapon (§ 245, subd. (a)(1) (§ 245(a)(1)), felony child endangerment (§ 273a, subd. (a)), and felony making a criminal threat (§ 422), and one misdemeanor count of domestic battery (§ 243, subd. (e)(1)).

### B. *The Preliminary Hearing*

The preliminary hearing was held in January 2022. Three witnesses testified for the prosecution: Jane Doe (the victim), Cynthia R. (Mendez's niece), and an investigating law enforcement officer. No witnesses testified for Mendez.

On September 15, 2021, Doe lived with Mendez and her three children. Mendez is the father of Doe's two daughters. That afternoon, Doe picked up the children from school and returned home with them. Mendez had been drinking all day and was "a little drunk." Doe had to go to work. Her coworkers were scheduled to pick her up for work at 3:00 p.m.

Before 3:00 p.m., Mendez grabbed a knife from the kitchen, went outside, and punctured a tire on the couple's one car. The knife had a handle when Mendez took it outside. Doe did not follow Mendez outside, but from inside the house she could hear air escaping from the tire. Mendez came back inside. His hand was bleeding. The knife's handle was missing.

Doe gave varying accounts of what happened before and after Mendez went outside and punctured the tire. On the day of the incident, Riverside County Sheriff's Deputy Gabriel Garcia responded to a 911 call and spoke to Doe at her residence. Cynthia was also there and translated for Doe because Doe does not speak English. Garcia recorded his conversation with Doe on a body camera, and a portion of that recording was played for the magistrate.[1]

Doe testified that before Mendez grabbed the knife and went outside, he "started being aggressive towards us, towards . . . [Doe]," but he did not say anything. She otherwise recalled telling Garcia that Mendez had been upset with her because he did not want her to take the car. She also said that Mendez did not want her to go to work. She recalled telling Garcia that before Mendez punctured the tire, Mendez grabbed her arm and pushed her as she was leaving the house. After reviewing a portion of the transcript of her conversation with Garcia, Doe confirmed that Mendez grabbed her arm and pushed

---

[1] The People have not included the recording as an exhibit in support of the writ petition. The exhibits do include a copy of the transcript of the recording, which the People attached to their opposition to Mendez's section 995 motion. At the hearing on that motion, the parties stipulated and the trial court agreed that the court would consider only the pages of the transcript that corresponded with the portion of the recording played before the magistrate.

3

her before puncturing the tire. But Doe later denied that Mendez pushed her at that point, even though she remembered telling Garcia about it.

Doe said that when Mendez came back inside after puncturing the tire, she was "[i]n the kitchen, in the living room." She described the residence as having an open format with everything being together, including "the kitchen, the bedrooms." Asked by the prosecutor what Mendez did when he entered the house, Doe initially responded, "He had the knife and he just told us to go outside but I felt that he was coming towards us." Mendez told Doe to leave the house with all three children. He wanted her to go outside because he did not want the children to see him with the cut on his hand. The children were in their bedroom.

Doe explained that when Mendez had the knife she "was really afraid that he was going to hurt us" and that he was "aggressive at that moment." Mendez was yelling at her. Doe explained that "[a]ggressivness means yelling."

When asked how Mendez was holding the knife to cause her to feel fearful, Doe said that Mendez did not have the knife in his hand anymore when she felt fearful. Mendez threw the knife into the kitchen when he came back inside. Mendez "went towards" her when he reentered the house, but he had already thrown the knife onto a surface in the kitchen. Mendez never went towards her with the knife in his hand. Doe was afraid that he would grab the knife and "hit us with it." Mendez told her and the children to go outside, and he threatened to hit Doe with the knife if she did not. Mendez

4

also told Doe's oldest child (a nine-year old son) to go outside too, but Mendez did not make any statements about the knife to Doe's son or go towards her son with the knife.

After Mendez reentered the house and when he told Doe to leave, Doe and Mendez were "close to each other." Doe's son came out of the bedroom and "got between" Mendez and Doe. Mendez had picked up the knife again. Doe's son pushed Mendez to get Mendez away from Doe, because her son saw that Mendez "had the knife on his hand against" Doe and was threatening Doe with the knife. Mendez was holding the knife in his injured right hand. Defense counsel asked Doe how Mendez was holding the knife, and she responded, "Right beside his hand," and "[o]n the side." Defense counsel asked, "So his hand's down, hanging down near his waist, and he's holding the knife in his hand?" Doe answered, "Yes." Mendez's exact words to Doe were "go outside, otherwise I will kill you."

On redirect examination, the prosecutor questioned Doe further about what happened after Mendez picked up the knife again. Doe confirmed that Mendez "came at" her and that he pointed the knife in her direction. Asked whether the knife was pointed at her "with the pointy end or the other end," Doe made a gesture and said, "With the hand." The prosecutor stated for the record that Doe had "picked her right hand up and raised it above her shoulder about ear level." After the prosecutor described the gesture, Doe said, "Yes." The prosecutor then asked Doe if the motion Doe had made with her hand was what Mendez "did with the knife," and Doe confirmed that it was.

5

On the day of the incident, Doe told Garcia that Mendez had threatened to kill "us." Cynthia asked Doe: "[W]hen he threatened you, did he have the knife trying to—to stab you?" Doe responded, "Yes." Doe otherwise told Cynthia that she was afraid of Mendez because he "threatened to kill her with a knife." Cynthia confirmed that Doe did not initially tell Garcia everything that had transpired. According to Cynthia, Doe did not want charges pressed against Mendez.

After the incident with the knife inside the house, Doe went outside. Doe said that as she was leaving and walking down the stairs outside, Mendez told her that he was going to kill her. Mendez was not holding the knife. Mendez followed her outside, threatened her, and immediately went inside. Doe also said that Mendez did not go outside but followed her to the door, where he pushed her when she "was almost outside by the door," and he then threatened to kill her.

After Mendez threatened to kill her, law enforcement arrived, but Doe said that she did not call them. Elsewhere in her testimony, Doe said that she had called law enforcement.

Doe said that the children were with her when Mendez made the threat and she also said that they were not with her because her coworkers had taken the children away from the house. She also said that her son went outside with her. She said that her coworkers arrived before Mendez threatened to kill her outside, and they took the children from inside and left with them. But she also stated that the coworkers arrived

when Doe was outside, and they went inside to get Doe's two daughters.  Doe left with her coworkers and her children.

When Garcia arrived at Doe's residence, Doe was not there.  Garcia spoke with Mendez.  Cynthia was at the residence when law enforcement arrived because Mendez had called her and asked her to take the children.  Cynthia called Doe.  Doe returned to her home and then spoke with Garcia.

The parties submitted on the prosecution's evidence.  Defense counsel argued that there was not "enough evidence" for the count of assault with a deadly weapon because it was not clear "exactly what happened with the knife, did [Mendez] hold it above his head, was it down around his waist area."  Counsel emphasized that it was not clear what happened because of the numerous accounts of the incident given by Doe.  The magistrate ruled:  "The court does agree with defense counsel, I didn't see sufficient evidence for a [section] 245(a)(1) holding order on that."

C. *The Information and the Section 995 Proceeding*

Following the preliminary hearing, the People filed an information with all of the same charges as those in the complaint, including the one count of assault with a deadly weapon.  Mendez moved under section 995 to dismiss that count.

At a hearing on the motion, defense counsel argued that the magistrate made a factual finding when he concluded that there was not sufficient evidence to hold Mendez on the assault with a deadly weapon count.  The People argued to the contrary.  The trial court agreed with defense counsel and granted the motion.  The court explained:  "I agree

7

with the defense that specifically saying the language that there is not sufficient evidence is a question of fact that there was not sufficient evidence that the assault with the knife, that actual element of that crime took place and transpired throughout this incident." The court further agreed with the defense "that there just wasn't sufficient evidence to say that the [section] 245(a) with the knife, in fact, took place." The court explained that it was granting the motion because "just taking the word as literal meaning from [the magistrate] that he did not see the sufficient evidence of [section] 245(a)(1)." The prosecutor asked the court to clarify if it had concluded that the magistrate made a factual finding, and the court stated: "Yes. That there was insufficient evidence. That by using that language, that that is what he meant of not having factual finding."

The People filed this petition for a writ of mandate to seek review of the court's ruling. We stayed proceedings in the trial court pending our determination.

## DISCUSSION

The People contend that the trial court erred by concluding that the magistrate had made a factual finding about the assault with a deadly weapon charge and thus erred by granting Mendez's section 995 motion. The People argue that upon independent review there was sufficient cause to believe that Mendez had committed the offense. We agree on all points.

### A. *Governing Law*

At a preliminary hearing, the magistrate's role "is to determine whether there is 'sufficient cause' to believe [the] defendant guilty of the charged offense." (*People v.*

8

*Abelino* (2021) 62 Cal.App.5th 563, 573 (*Abelino*); § 872.) "That phrase is generally equivalent to 'reasonable and probable cause' which has been defined as such a state of facts as would lead a [person] of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People v. Orduno* (1978) 80 Cal.App.3d 738, 750; *People v. Slaughter* (1984) 35 Cal.3d 629, 636 (*Slaughter*).) Probable cause "signifies a level of proof below that of proof beyond a reasonable doubt, or even proof by a preponderance of the evidence." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1189.)

In determining whether there is sufficient cause, the magistrate may weigh the evidence, resolve evidentiary conflicts, and assess witness credibility. (*Slaughter*, *supra*, 35 Cal.3d at p. 637.) The magistrate's role in assessing witness credibility, however, is limited. (*Zemek v. Superior Court* (2020) 44 Cal.App.5th 535, 546 (*Zemek*).) The magistrate should not reject the prosecution's evidence unless the evidence is "'inherently implausible, the witnesses [have been] conclusively impeached, or the demeanor of the witnesses [is] so poor that no reasonable person would find them credible.'" (*Ibid.*) A charge should "'not be dismissed for lack of probable cause "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it."'" (*Abelino*, *supra*, 62 Cal.App.5th at p. 573; *Slaughter*, at p. 637.)

If a magistrate holds a defendant to answer on one offense but dismisses another, section 739 authorizes a district attorney to reallege the dismissed offense in an

information so long as the magistrate did not determine as a factual matter that the offense did not occur (*Jones v. Superior Court* (1971) 4 Cal.3d 660, 666 (*Jones*)), "the evidence before the magistrate shows that such offense was committed" (*id.* at pp. 664-665), and "the offense 'arose out of the transaction which was the basis for the commitment' on a related offense" (*id.* at p. 665).

Under section 995, a defendant may move to dismiss an information on the ground that the defendant has "been committed without reasonable or probable cause." (*Id.*, subd. (a)(2)(B).) "The character of judicial review under section 739 depends on whether the magistrate has exercised [the] power to render findings of fact." (*Slaughter*, *supra*, 35 Cal.3d at p. 638.) If the magistrate has made such findings, "those findings are conclusive if supported by substantial evidence." (*Ibid.*) "If [the magistrate] has not rendered findings, however, the reviewing court cannot assume that [the magistrate] has resolved factual disputes or passed upon the credibility of witnesses. A dismissal unsupported by findings therefore receives the independent scrutiny appropriate for review of questions of law." (*Ibid.*) "'Absent controlling factual findings, if the magistrate dismisses a charge when the evidence provides a rational ground for believing that [the] defendant is guilty of the offense, [the] ruling is erroneous as a *matter of law*, and will not be sustained by the reviewing court.'" (*People v. Bautista* (2014) 223 Cal.App.4th 1096, 1101 (*Bautista*).)

In reviewing a trial court's ruling on a section 995 motion, we disregard the ruling of the trial court and directly review the magistrate's ruling. (*Bautista*, *supra*, 223

Cal.App.4th at p. 1101.) We independently review the magistrate's legal conclusions. (*Zemek*, *supra*, 44 Cal.App.5th at p. 546.) We "draw all reasonable inferences in favor of the information [citations] and decide whether there is probable cause to hold the defendant[] to answer, i.e., whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the defendant's guilt' [citations]." (*Lexin v. Superior Court* (2010) 44 Cal.4th 1050, 1072.) "'We will not set aside an information "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it."'" (*People v. Scully* (2021) 11 Cal.5th 542, 582 (*Scully*).)

B. *Analysis*

The People argue that the magistrate made "[n]o factual findings" when declining to hold Mendez to answer on the charge of assault with a deadly weapon. We agree.

As already noted, a magistrate has the power to weigh the evidence, assess credibility, and make factual findings, but the magistrate need not exercise any of those powers in determining whether the defendant should be held to answer. (*Slaughter*, *supra*, 35 Cal.3d at pp. 637-638.) Thus, the magistrate may make factual findings and on that basis decline to hold the defendant to answer. But the magistrate may instead determine that the evidence is insufficient and on that basis decline to hold the defendant to answer, without making any factual findings.

For example, a magistrate could decline to hold a defendant on a rape charge if the magistrate found, as a matter of fact, that the alleged victim consented to intercourse. (*Jones*, *supra*, 4 Cal.3d at p. 666.) In that case, we would be required to defer to the

11

magistrate's factual finding of actual consent as long as it was supported by substantial evidence.  (*Slaughter*, *supra*, 35 Cal.3d at p. 638.)  But alternatively, a magistrate could decline to hold a defendant to answer on a rape charge because there was insufficient evidence of lack of consent.  That would not constitute a factual finding of actual consent.  (The magistrate might even think that there was insufficient evidence to find actual consent *and* insufficient evidence to find *lack* of actual consent—the evidence as to consent might be too thin to support a finding either way.)  If the magistrate merely determined that the evidence as to one or more elements was insufficient, then the magistrate's ruling would not be entitled to deference, and we would independently review the issue of the sufficiency of the evidence.  (*Ibid.*; see also *People v. Superior Court* (*Day*) (1985) 174 Cal.App.3d 1008, 1015-1017.)

Here, the reporter's transcript of the preliminary hearing shows that the magistrate made no factual findings.  At that hearing, defense counsel argued, "I don't know exactly what happened with the knife, did he hold it above his head, was it down around his waist area.  I don't know if there is enough evidence for the [section] 245(a)(1) . . . ."  Defense counsel expressly was not arguing for a particular theory of the facts.  He was not arguing that Mendez in fact held the knife above his head, or that he in fact held it near his waist.  Rather, defense counsel was arguing that the evidence was so unclear and conflicting that he did not know what the facts were, so he did not "know if there is enough evidence" to support the charge of assault with a deadly weapon.  The magistrate expressly agreed with defense counsel:  "The court does agree with defense counsel, I didn't see sufficient

12

evidence for a [section] 245(a)(1) holding order on that." And the magistrate did not make any other statements suggesting that he was making any factual findings.

We accordingly conclude that the magistrate did not make any factual findings in declining to hold Mendez on the charge of assault with a deadly weapon. Mendez does not argue to the contrary.

Because the magistrate did not make factual findings, we independently determine whether the evidence shows some rational ground for assuming the possibility that Mendez committed assault with a deadly weapon. (*Scully*, *supra*, 11 Cal.5th at p. 582; *Abelino*, *supra*, 62 Cal.App.5th at p. 578.) We agree with the People that it does.

The crime of assault with a deadly weapon is defined as "an assault upon the person of another with a deadly weapon or instrument other than a firearm." (§ 245(a)(1).) The offense "has two components: '(1) the assault, and (2) the means by which the assault is committed.'" (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 85 (*Raymundo*).)

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) An assault "requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790 (*Williams*).) A defendant has a present ability to injure when the "'defendant has attained the means and location to strike immediately'" (*People v. Chance* (2008) 44 Cal.4th 1164, 1174 (*Chance*)), even if the injury would not

13

"necessarily occur as the very next step in the sequence of events, or without any delay" (*id.* at p. 1172). Thus, "when a defendant equips and positions himself to carry out a battery, he has the 'present ability' required by section 240 if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*Ibid.*) "Thus, an assault can occur even when the defendant makes no contact with the victim." (*Raymundo*, *supra*, 52 Cal.App.5th at p. 85.)

For purposes of section 245(a)(1), "a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.) A knife is not considered a deadly weapon as a matter of law. (*In re B.M.* (2018) 6 Cal.5th 528, 533.) If the weapon is not inherently deadly, "the object alleged to be a deadly weapon must be used in a manner that is not only 'capable of producing' but also '"*likely to produce* death or great bodily injury."'" (*Ibid.*; *Raymundo*, *supra*, 52 Cal.App.5th at p. 84.)

Drawing every reasonable inference in favor of the information (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 842), we conclude that the evidence introduced at the preliminary hearing was sufficient to hold Mendez on the assault charge. Doe testified that when Mendez came back inside with the knife, he came towards her with it and pointed it at her while she and Mendez were standing close together. Mendez threatened to kill her with the knife. Mendez had punctured a tire with

14

the knife, so it is reasonable to infer that the knife was capable of inflicting similar harm on a person. (*Raymundo*, *supra*, 52 Cal.App.5th at p. 87.) While holding the knife in his right hand, Mendez raised the knife to around his ear and pointed it at Doe. From those movements, it is reasonable to infer that Mendez intended to use the knife offensively against Doe. (*Ibid.*) When Mendez held the knife, Doe's son got in between Doe and Mendez and pushed Mendez away from Doe because Mendez was threatening her with a knife. And Doe reported to law enforcement that when Mendez threatened her he had "the knife trying to—to stab" her.

The prosecution's evidence thus supports reasonable inferences that by putting himself in close proximity to Doe and aggressively wielding a sharp knife, Mendez equipped and positioned himself to carry out a battery (*Chance*, *supra*, 44 Cal.4th at p. 1172) and that he "actually used the knife in a way capable of producing, and likely to produce, death or great bodily injury—that is, as a deadly weapon" (*Raymundo*, *supra*, 52 Cal.App.5th at p. 88). Moreover, it is reasonable to infer from the evidence that but for the intervention of Doe's son, Mendez's act by its nature would probably and directly result in the application of physical force against Doe. (*Williams*, *supra*, 26 Cal.4th at p. 790.) Moreover, although there is no evidence that Mendez touched or injured Doe with the knife, that is not an element of assault with a deadly weapon. (*Raymundo*, at p. 85.)

Mendez points out, and we recognize, that Doe's testimony was contradictory on numerous salient points. She testified that she "felt that" Mendez came at her with the

15

knife and that he did not come at her with the knife, that he pushed her before he punctured the tire and that he did not, that her children were with her and that they were not with her, that she called the police and that she did not call the police, and so forth. But in general a factfinder is free to credit some parts of a witness's testimony and to disregard others.  (*Chan v. Title Ins. & Trust Co.* (1952) 39 Cal.2d 253, 258 )  Moreover, the record contains evidence that Doe's intermittent denial and minimization of Mendez's conduct may have been motivated by a desire to protect him—according to Cynthia, Doe did not want to press charges against Mendez and initially gave law enforcement an incomplete account of the facts.  Consequently, a person of ordinary caution and prudence could reasonably credit Doe's incriminating statements, disregard her denials, and on that basis conscientiously entertain a strong suspicion of Mendez's guilt. (*Slaughter*, *supra*, 35 Cal.3d at p. 636.)

For all of these reasons, we conclude that the evidence introduced at the preliminary hearing provides a rational ground for assuming the possibility that Mendez committed the offense of assault with a deadly weapon.  The trial court therefore erred by granting Mendez's motion under section 995 and dismissing that charge.

DISPOSITION

The petition for a writ of mandate is granted.  Let a peremptory writ of mandate issue directing the trial court (1) to vacate its order granting Mendez's motion under section 995 and dismissing the charge of assault with a deadly weapon, and (2) to enter a

16

new and different order denying the motion and thereby reinstating the charge. The stay

of proceedings in the trial court shall remain in effect until this decision is final.

CERTIFIED FOR PUBLICATION

MENETREZ_____

J.


We concur:

McKINSTER_____

Acting P. J.

CODRINGTON_____

J.