[Civ. No. 6793.   Fourth Dist.   Dec. 14, 1962.]

HARRY TANCREDI, Plaintiff and Respondent, v. CHARLES M. GARRETT, Jr., et al., Defendants and Appellants.

Carstens, Todd, Robinson & Fry and William W. Carstens for Defendants and Appellants.

Miller, Nisson, Kogler & Wenke and William F. Wenke for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal by defendants, Charles M. Garrett, Jr. and Lowell R. Smith, from a judgment in favor of plaintiff for damages for breach of contract of sale of land.

## FACTS

On August 7, 1959, defendants as owners, agreed in writing to sell certain described land to plaintiff for the sum of $80,000, $2,000 of which was then in the hands of the broker and was deposited with the title company escrow holder, $33,000 to be deposited with the escrow holder within ten days, and the balance of $45,000 to be covered by a note and deed of trust. Several conditions were contained in the agreement involving annexation to the City of El Cajon, commercial zoning, release of a portion on sale to a major oil company, escrow to be for a period of one year, title to be furnished by seller within 360 days.

On August 17, 1959, escrow instructions worded in slightly different language but with substantially the same terms were signed by defendants and handed to the title company

escrow holder with a similar provision that the escrow holder had a 365-day time limit.

On September 16, 1959, escrow instructions on the sale were signed by defendants and handed the escrow holder; a carbon copy thereof was signed by plaintiff and handed the escrow holder. By these instructions of September 16, 1959, the overall total price and the land to be purchased remained the same but it provided for a deposit of $5,000 by October 1, 1959, and $30,000 "within 120 days from this date or when the contingency herein has been met." The "contingencies" recited in the instrument were: (1) sale of a portion of the property (specifically described in the original agreement) to a major oil company, and (2) annexation of the property to El Cajon and rezoning for commercial purposes. This portion of the instruction closes with the sentence, "Buyer to advise escrow holder in writing when said contingencies have been met and authorize escrow holder to proceed with the closing of the escrow." On the reverse side of the sheet containing the instruction it is stated, "You have 120 days within which to comply with these instructions and additional time as may be required provided written demand to cancel by any party is not handed you after the time given to comply." This last was all a part of the printed form except the figure "120," whereas the first portion relating to time for meeting contingencies was all typed in. On March 21, 1960, an additional amendment of the escrow instructions, signed by all parties, waived the contingency of annexation to El Cajon which affected a portion of the property.

Under date of June 23, 1960, without notice to plaintiff or the escrow holder, defendants executed a grant deed to Helix Land Company, Inc., a corporation, as grantee, describing the same property. Said grantee is a stranger to plaintiff. Defendants acknowledged their signatures to said deed on June 28, 1960, and it was recorded July 1, 1960. By letter dated July 1, 1960, but not delivered to plaintiff until July 5, 1960, an attorney for defendants stated that because of plaintiff's failure to comply with certain terms of the escrow agreement, defendants, by said letter, "revoke, nullify, cancel and rescind said escrow agreement." Copies of this letter were mailed to the broker, the escrow holder, and to Smith & Garrett Medical Association. The escrow holder also received the copy on July 5, 1960. The date it was received by the two other addressees is not shown by the record.

On July 7, 1960, plaintiff's attorney wrote to defendants

stating plaintiff's present ability and readiness to complete the escrow and demanding fulfillment by defendants. It was apparently received on July 8, 1960. On July 25, 1960, defendants' attorney gave the first direct notice to the escrow holder that the escrow be terminated.

During the period from August 7, 1959 to July 1, 1960, plaintiff expended a great deal of time, energy and money in negotiating a sale of the portion of the property which was to be sold to a major oil company and in preparing a subdivision map for approval by the proper authorities of the City of El Cajon and attempting to secure rezoning of the portion of the property inside El Cajon. This included $3,145.67 incurred with an engineering firm in connection with said rezoning; and preparation for subdivision and contacts with appropriate public officers for city approval, together with other fees to the city itself.

There was some evidence presented by defendants of claimed procrastination by plaintiff. However, the evidence of reasonable diligence in accomplishing rezoning, subdivision approval by the city, and of sale negotiation with Richfield Oil Company, was ample to justify the belief of the trial judge that plaintiff did everything required by the laws of El Cajon to accomplish rezoning and to bring the oil company sale almost to completion; that plaintiff had brought the subdivision final map to the stage where only the signatures of defendants were necessary; that defendants did not make themselves available to sign said map and that all of this was known to defendants when they signed the deed to the Helix Company.

The court found for plaintiff in accordance with basic facts above recited: that defendants, without cause or reason, deliberately refused to perform the agreement of sale and that plaintiff was damaged in the total sum of $20,052.91; and rendered judgment accordingly. Defendants appeal.

## TIME FOR PERFORMANCE

Defendants first contend that the agreement of sale was amended by the escrow instructions of September 16, 1959, so that the time for completion on the part of plaintiff was 120 days or less. With this we cannot agree. The term "or" is disjunctive, so that 120 days "or" when contingency has been met simply creates an alternative. This meaning is fortified by the clause that the buyer is to notify seller when the contingencies had been met. The various contacts be-

tween the parties' agents and transmittal of information kept defendants apprised of progress. They signed a waiver of one small phase of the contingencies on March 21, 1960, long after the time in which they now claim the escrow had expired.

The use of an escrow is simply a customary and convenient method of carrying out an agreement of sale. It does not supplant the basic agreement although they may be read together to ascertain intent. *(King* v. *Stanley,* 32 Cal.2d 584, 589 [7] [197 P.2d 321]; *Keelan* v. *Belmont Co.,* 73 Cal. App.2d 6, 12 [4] [165 P.2d 930]; *Katemis* v. *Westerlind,* 120 Cal.App.2d 537, 542 [2] [261 P.2d 553]; *Ashburn* v. *Miller,* 161 Cal.App.2d 71, 80 [326 P.2d 229]; *Karras* v. *Title Ins. & Guar. Co.,* 118 Cal.App.2d 659, 664 [1] [258 P.2d 866]; *Leiter* v. *Handelsman,* 125 Cal.App.2d 243, 250 [5] [270 P.2d 563].)

We agree with the trial court that the parties and their agents, being business and professional men of El Cajon, must have had in mind the innumerable delays commonly encountered in seeking city annexation proceedings, rezoning ordinances, subdivision map proceedings and negotiations to convince a major oil company of the propriety of a gasoline station ownership site. Reading all the written instruments together, we are satisfied that the trial court's interpretation of the intent of the parties was entirely reasonable. The phraseology of the portion specially typed in, ''Buyer to advise escrow holder in writing when said contingencies have been met and authorize escrow holder to proceed with the closing of this escrow,'' clearly gives direction and control to the printed phrase ''additional time as required . . .'' Notice was given by plaintiff of his readiness, willingness and ability to complete his part of the escrow and to close it on July 7, 1960. This was prior to any direct notice to the escrow holder from defendants that escrow should be cancelled. There was testimony that the final subdivision map was ready for defendants' signatures and that this was the last act necessary to close the escrow. Defendants, in substance, refused even to make themselves available to sign the map. Prior to July 1, 1960, the broker left the map at their office for signature. They did not sign it. Defendants were the preventative parties in the closure of the escrow, not plaintiff.

## BAD FAITH

Defendants next contend that even if they breached the contract they were not guilty of bad faith. The plaintiff

charged and the court found that defendants "without cause or reason have deliberately refused to perform said agreements . . ." and concluded that defendants acted in bad faith.

In *Rasmussen* v. *Moe,* 138 Cal.App.2d 499, 503 [4] [292 P.2d 226] (referring to Civ. Code Section 3306), the court said: "The term bad faith, as used in the statute does not require a show of fraud, but only of a deliberate refusal to perform without just cause or excuse." See also *Engasser* v. *Jones,* 88 Cal.App.2d 171, 177 [7] [198 P.2d 546].

A question of bad faith, as is true here, usually resolves itself into a question of fact. *(Hamaker* v. *Bryan,* 178 Cal. 128, 129 [172 P. 391]; *Wheeler* v. *Oppenheimer,* 140 Cal.App.2d 497, 501 [4] [295 P.2d 128]; *Fara* v. *Wells,* 156 Cal.App.2d 322, 329 [319 P.2d 394].)

From the evidence, the trial court was entitled to believe that the work of plaintiff in rezoning, subdivision preparation and working up a sale of a portion of the land to Richfield Oil Company had enhanced the immediate value of the land; that defendants deliberately negotiated with another buyer in an attempt to obtain such higher price regardless of their outstanding obligation to plaintiff and that without notice to plaintiff or to the escrow holder, and in deliberate disregard of their still binding contract with plaintiff, executed a deed to Helix Land Co. The court was under no compulsion to believe that the letter dated July 1, 1960, was mailed on the day it was dated. The only two addressees whose rights were affected did not receive it until July 5, 1960. The court, in view of all the evidence, may have believed that said letter was, in truth, falsely dated. Furthermore, it was not a notice addressed by its terms to the escrow holder. Inconsistencies in defendants' testimony were noted by the trial court and may well have added to its lack of faith in their story.

According to defendants' own story they not only had, on March 21, 1960, collaborated in the continuance of plaintiff's efforts to meet the contingencies, but had frequently waived time rigidity in the culmination of the sale. Thus, even assuming that the trial court placed confidence in the verity of some parts of defendants' story, a notice giving a reasonable time for completion was necessary to reinstate such rigidity in the contract. As was said in *Lifton* v. *Harshman,* 80 Cal.App.2d 422, 433 [12] [182 P.2d 222]:

"When the requirement as to time has been waived by one party he must, in order to put the other in default, not only give notice that strict compliance will thereafter be required but must allow the other party a reasonable time within which to perform." See also *Chan* v. *Title Ins. & Trust Co.*, 39 Cal.2d 253, 259 [4] [246 P.2d 632] ; *Carberry* v. *Trentham*, 143 Cal.App.2d 83, 89 [2] [299 P.2d 966] ; *Pease* v. *Brown*, 186 Cal.App.2d 425, 428 [1-2] [8 Cal.Rptr. 917].

Defendants now contend that they acted on the advice of counsel, citing *Fox* v. *Aced*, 49 Cal.2d 381 [317 P.2d 608]. The assertion is not supported by any transcript reference and we have not been able, after searching the record carefully, to find any evidence to support the statement. Respondent asserts, without any reply contradiction, that no such evidence exists in the record. In the absence thereof, we cannot consider the point.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.