[Civ. No. 35471. Second Dist., Div. One. June 11, 1970.]

CRESCENTA VALLEY MOOSE LODGE NO. 808,
Plaintiff and Appellant, v.
ALAN V. BUNT et al., Defendants and Respondents.

## COUNSEL

Fizzolio & Fizzolio, James M. Fizzolio and C. Thomas Fizzolio for Plaintiff and Appellant.

Hutchinson & Irwin, Paul R. Hutchinson and Richard H. Hicks for Defendants and Respondents.

## OPINION

**GUSTAFSON, J.**—Defendants (hereinafter collectively called "sellers") are the owners of real property which plaintiff corporation (hereinafter called "buyer") contracted to purchase by a document dated December 1, 1967, entitled "Standard Form Deposit Receipt." That document contemplates that the transaction would be completed through an escrowee.

Unfortunately, as is so often the case with contracts prepared by real estate brokers, the document is incomplete and uncertain. The blanks were not filled in the following printed sentence: "Escrow shall be commenced within _____ days from acceptance of this offer, and seller and buyer agree to sign escrow instructions, deeds, and all other documents within _____ days after written notice that the same are ready for execution." Although the buyer signed escrow instructions on December 1, 1967, the sellers did not sign the instructions until January 8, 1968. The escrow instructions did not become an enforceable contract until signed by both buyer and sellers, that is, on January 8, 1968. (*Altadena Escrow Corp.* v. *Beebe* (1960) 181 Cal.App.2d 743 [5 Cal.Rptr. 530].) ██ "The use of an escrow is simply a customary and convenient method of carrying out an agreement of sale. It does not supplant the basic agreement although they may be read together to ascertain intent." (*Tancredi* v. *Garrett* (1962) 210 Cal.App.2d 818 [27 Cal.Rptr. 52].)

██ The basic agreement in the case at bench contained the following provision: "This is subject to approval of Supreme Lodge, Loyal Order of the Moose, and all other necessary licensing agencies. These approvals to be obtained no later than 30 days after opening of escrow." The escrow instructions dated December 1, 1967, provided: "This escrow is subject to approval of Supreme Lodge, Loyal Order of Moose and all other licensing agencies within 30 days from date." If December 1, 1967, was the date of "opening of escrow," there is no inconsistency in the provisions of the two documents. If, however, "opening of escrow" did not occur until January 8, 1968, when both buyer and sellers had signed the escrow instruc-

tions, the provisions of the escrow instructions differ from the provisions of the deposit receipt in that the former required obtaining the "approvals" by December 31, 1967, whereas the latter required obtaining the "approvals" by February 7, 1968.

This lawsuit by the buyer against the sellers for specific performance or, in the alterative, for damages for breach of contract arose by reason of the sellers' notifying the buyer in writing on January 3, 1968, as follows: "The transaction for purchase and sale of the said property, as evidenced by the Deposit Receipt and the Escrow Instructions of Escrow Investment Co., escrow number 10396, contains contingencies to be removed not later than thirty days (30) from December 1, 1967, the date of the opening of the escrow. Those contingencies have not been removed as required and therefore the transaction is herewith cancelled and rescinded for the failure of buyers to perform the conditions required of them to be performed within the allotted time." On the same date there was delivered to the escrowee a written notice from the buyer that the "contingencies have been approved by the Supreme Lodge and the necessary Licensing agencies, to our satisfaction."

The sellers moved for summary judgment. The court granted the motion with respect to the cause of action for specific performance, but denied the motion with respect to the cause of action for damages. Buyer perfected this appeal.

█ It is elementary that summary judgment is a drastic measure which deprives the losing party of trial on the merits. It therefore may not be invoked unless it is clear from the affidavits (declarations in this case) that there is no triable issue of fact.

It is not asserted by the sellers that if the purchase contract had contained no clause conditioning the sale upon obtaining certain "approvals," the contract would not have been specifically enforceable by the buyer. Sellers' position in the trial court was that the condition was at least in part for the benefit of sellers, that the condition was not met and that buyer could not waive the condition. A declaration filed by one of the sellers states in effect that the buyer represented during negotiations that without a liquor license the buyer would be unable to make payments on the notes secured by deeds of trust on the property and that the sellers would therefore be unwilling to sell to the buyer unless the buyer obtained a liquor license and authorization from the city to use the premises for the sale of liquor. █ A declaration filed on behalf of the buyer states in effect that the condition was inserted solely for the buyer's benefit to give the buyer time "to determine if it wanted to proceed with the purchase."

■ If a condition is solely for the benefit of a buyer, its effect (at least where, as here, buyer in good faith sought to meet the condition) is to give the buyer an option not to consummate the purchase if he fails to meet the condition. (*Caras* v. *Parker* (1957) 149 Cal.App.2d 621 [309 P.2d 104].) ■ The buyer may waive a condition precedent which is solely for his benefit. (*Wesley N. Taylor Co.* v. *Russell* (1961) 194 Cal.App.2d 816 [15 Cal.Rptr. 357].) Sellers assert in their brief that the trial court "could properly rule as a matter of law that the conditions were not solely for the benefit of the buyer." Sellers stress the fact that a large portion of the purchase price was to be a purchase money note and that they obviously had an interest in the buyer's obtaining a liquor license which would render less likely the buyer's defaulting on the note. However, in *O'Connell* v. *Zimmerman* (1958) 157 Cal.App.2d 330 [321 P.2d 161] the buyer contracted to purchase real property, fixtures and equipment and the liquor license held by seller with more than half of the purchase price being represented by a purchase money note. The buyer's application to the state for transfer of the liquor license to him was denied. He nevertheless waived the transfer of the liquor license and sued the seller for specific performance. The trial court ordered specific performance and its judgment was upheld on appeal. The appellate court stated that the buyer "merely waived a benefit to which he alone was entitled, that is the transfer of the on-sale beer and wine license to him." ■ Whether a condition is solely for the benefit of the buyer is for the trial court to determine as a fact from all of the evidence. (*Wesley N. Taylor Co.* v. *Russell* (1961) 194 Cal.App.2d 816 [15 Cal.Rptr. 357].)

Persons other than the two declarants were present at the meeting on December 1, 1967, when the subject of the condition was discussed. None of those other persons executed a declaration. ■ The language of the condition is ambiguous in that it calls for obtaining approvals of all "necessary licensing agencies" without specifying the agencies. Of more importance is the failure of the condition to specify for whose benefit it was intended. ■ The declaration filed on behalf of the buyer was sufficient to raise a triable issue of fact, that is, for whose benefit the condition existed. The buyer is thus entitled to have that issue determined, not on two sketchy conflicting declarations, but on the oral testimony, subject to cross-examination, of witnesses in the courtroom.

Even if it were uncontradicted that the condition was at least partly for the benefit of the sellers and therefore could not be waived by the buyer alone, a triable issue of fact exists. When the sellers on January 3, 1968, notified the buyer that the sellers would not perform because of the buyer's breach, it is arguable that the buyer was not in default and that the sellers' notice was an anticipatory breach by the sellers. On that date the sellers

had not signed the escrow instructions. The only contract then existing between the parties was the deposit receipt which called for the "approvals to be obtained no later than 30 days after opening of escrow." While one declaration filed on behalf of the sellers states that on December 1, 1967, "an escrow was opened for the purchase of the property, and the escrow instructions which are attached to the Complaint, marked Exhibit 'B', were prepared" and while the declaration filed on behalf of the buyer does not expressly deny the escrow "was opened" December 1, 1967, the exhibit referred to by the sellers' declaration shows on its face that it was not received by the escrowee until January 9, 1968. Sellers admit in this court that sellers did not sign the escrow instructions until January 8, 1968. The other declaration filed on behalf of the sellers in the trial court in support of the motion for summary judgment was executed by an employee of the escrowee and stated: "Escrow instructions were drawn and dated on December 1, 1967, and it was assigned Escrow No. 10396." The declaration further states "that the escrow was cancelled [January 3, 1968] by the sellers because of the failure of the buyers to obtain any approval of any of the necessary licensing agencies." ■ Although in given situations the parties may intend that an escrow is deemed opened on the date when one of the parties signs the escrow instructions (see *King* v. *Stanley* (1948) 32 Cal.2d 584 [197 P.2d 321]), it probably is more customary that the parties do not consider escrow to be opened until both parties have signed the escrow instructions. If the latter was contemplated by the parties in the case at bench, the buyer was not in default on January 3, 1968, and the sellers' notice excused performance by the buyer. "If a party to an obligation gives notice to another, before the latter is in default, that he will not perform the same upon his part, . . . such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party." (Civ. Code, § 1440.) ■ This does not mean, of course, that the buyer need never meet the condition, but only that he need not meet the condition prior to filing an action to enforce the agreement. Because of the contradictions in the sellers' own declarations, there is a triable issue of fact as to whether the escrow was opened December 1, 1967.

We do not discuss these matters in any further detail because it is evident that the trial court rendered a judgment on a different theory. If the buyer breached the contract by failing to meet the condition which the sellers assert was at least partly for the benefit of the sellers, the sellers would have been entitled to a summary judgment on the cause of action for damages for breach of contract as well as on the cause of action for specific performance. However, the trial court denied the motion as to the cause of action for damages for breach of contract. The only conclusion

which can logically be drawn from the trial court's action is that there are triable issues of fact as to whether the sellers breached the contract, but that even if the sellers did breach the contract, the buyer is not entitled to specific performance. That conclusion in turn must necessarily be based upon section 3390 of the Civil Code which precludes specific performance of an "agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable."

The sellers contend "that the indefiniteness of the conditions in the instant contract, and the very dispute over them, shows that as a matter of law [the buyer] is not entitled to specific performance." The cases cited by the sellers are inapposite. The precise act which is to be done by the sellers here is clearly ascertainable. The sellers are to convey to the buyer certain specifically described property. What is uncertain is whether the sellers became obligated to make the conveyance. ■ "It is only when the uncertainty or incompleteness of a contract prevents the court from knowing what to enforce that the defense of uncertainty has rationality." (*Henderson* v. *Fisher* (1965) 236 Cal.App.2d 468 [46 Cal.Rptr. 173].) The court in the case at bench knows what to enforce. What is not known is whether the buyer became entitled to conveyance from the sellers.

■ Even when the uncertainty of a written contract goes to "the precise act which is to be done" (Civ. Code, § 3390), extrinsic evidence is admissible to determine what the parties intended. (*Burrow* v. *Timmsen* (1963) 223 Cal.App.2d 283 [35 Cal.Rptr. 668, 100 A.L.R.2d 544].) It is only when the extrinsic evidence fails to remove the ambiguity that specific performance must be refused. (*White Point Company* v. *Herrington* (1969) 268 Cal.App.2d 458 [73 Cal.Rptr. 885]; *Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749 [75 Cal.Rptr. 533].) ■ Where, as here, the concern is not what should be done but whether it should be done, extrinsic evidence is unquestionably admissible. ■ For reasons stated above, the trial court erred in granting summary judgment when the declarations before it revealed that there would be a conflict in the evidence on the question of whether the sellers became obligated to convey.

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.