Filed 8/24/23  Sushi KJ Corp. v. Hana Escrow Co. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SUSHI KJ CORPORATION et al.,<br><br>　　　Plaintiffs and Respondents,<br><br>　　　　v.<br><br>HANA ESCROW COMPANY INC.,<br><br>　　　Defendant and Appellant. | B325421<br><br>(Los Angeles County Super. Ct. No. 20STCV41331) |

APPEAL from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Glenn A. Williams for Defendant and Appellant.

Law Offices of Gregory S. Kim, Gregory S. Kim and Vincent Chan for Plaintiffs and Respondents.

\* \* \* \* \* \*

The seller in a commercial real estate transaction told the buyer that it had no outstanding tax liability; that was untrue. As pertinent here, the buyer sued *the escrow company* for negligent misrepresentation. The trial court dismissed that claim on demurrer, and we affirmed the judgment for the company in a prior appeal. The trial court also denied the escrow company's motion for attorney fees from the buyer and the buyer's predecessor in interest. We conclude that the court was correct in denying the motion as to the predecessor, but erred in denying it as to the buyer. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

In December 2017, Sang Woo Lee (Lee) entered into a contract to buy a restaurant from Yamato Kura, LLC (Yamato). Lee and Yamato contracted to have Hana Escrow Company, Inc. (Hana) serve as the escrow agent for the transaction.[1]

The original December 2017 escrow instructions, in a section denoted "General Provisions," contained an attorney fees provision stating:

---

[1] The parties did not include a copy of this contract in the record below.

2

*"The parties hereto, jointly and severally, promise to pay on demand,* as well as to indemnify and hold the escrow holder harmless from *any and all* costs, damages, judgments, *attorney fees*, expenses and liabilities of any kind or nature whatsoever, *occasioned [by] any party, including costs incurred by the escrow holder in connection with instituting, prosecuting or defending litigation, which in good faith the escrow holder may thus incur and sustain. . . ."* (Italics added.)

In a January 2018 amendment to those instructions, Lee assigned "all rights, title, interest in and to the" restaurant to Sushi KJ Corporation (Sushi).

In an April 11, 2018 amendment to those instructions, (1) Sushi and Yamato instructed Hana to close escrow *that day*; (2) Yamato "guarantee[d] and warrant[ed]" that there were no undisclosed liens against the restaurant; (3) Sushi and Yamato instructed Hana to withhold $75,000 of the sales price from Yamato until Yamato provided proof—outside of escrow—that there were no outstanding tax liabilities; and (4) Sushi and Yamato agreed to absolve Hana of any liability for disbursing the $75,000 and Sushi agreed to "indemnify, release and hold Hana . . . harmless from any/all liabilities, including but not limited to attorney fees . . . in regards to any excess taxes due . . . ."

Over a year later, the California tax authorities informed Sushi—as Yamato's successor—that it owed $285,137.08 in past taxes, interest and penalties imposed against the restaurant.

3

## II.     Procedural Background

### A.     *Sushi and (eventually) Lee sue Yamato and Hana*

In October 2020, Sushi sued Yamato, Hana, and others.  In the operative third amended complaint, Sushi and Lee (collectively, plaintiffs) sued Hana for negligent misrepresentation.  Specifically, and as we noted in our prior opinion, this claim rested on what boiled down to four misrepresentations—namely, that (1) Hana "warranted and represented" (in a document entitled "Transfer Disclosure Statement") that Yamato had never been more than three months in arrears on tax payments; (2) Yamato and its principal "warranted and represented" in the escrow instructions that they would pay taxes with the $75,000 Hana withheld during escrow; (3) Hana provided Sushi with an "inaccurate closing statement" that "showed . . . only $1,900.00 was due" to the state rather than the $285,137.08 actually due; and (4) Hana "with[held] information" of an unspecified nature that somehow made the "above described" "statements" "misleading" and "incomplete."

### B.     *The trial court sustains Hana's demurrer, and we affirm*

Hana demurred to the sole claim against it, and the trial court sustained that demurrer without leave to amend and entered a judgment declaring Hana to be the "prevailing party." Plaintiffs appealed, and we affirmed that judgment in an unpublished opinion.  (*Sushi KJ Corporation v. Hana Escrow Company, Inc.* (Apr. 27, 2023, B321923) [nonpub. opn.].) Specifically, we ruled that the first two misrepresentations were not actionable because they were not made *by Hana*; that the third misrepresentation was based on a misreading of the closing

4

statement; and that the fourth was not pled with the requisite specificity.

### C. *Hana moves for attorney fees*

While plaintiffs' appeal of the demurrer was pending, Hana filed a motion with the trial court for $20,080 in fees, invoking the attorney fees clause in the original escrow instructions. After further briefing and a hearing, the trial court denied Hana's motion. The court reasoned that Hana was not entitled to attorney fees because (1) Civil Code section 1717 entitles a prevailing party to its fees "in any action on a contract," and (2) plaintiffs' negligent misrepresentation claim was not an "action on a contract."

### D. *Hana appeals*

Hana filed this timely appeal.

## DISCUSSION

Hana argues that the trial court erred in denying its motion for attorney fees against both Sushi and Lee. Although the denial of attorney fees is reviewed for an abuse of discretion (*Walker v. Ticor Title Co. of Cal.* (2012) 204 Cal.App.4th 363, 370), we independently review any subsidiary legal issues (including the meaning of statutes and contracts) as well as the subsidiary application of contractual or statutory terms to undisputed facts (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894; *Khan v. Shim* (2016) 7 Cal.App.5th 49, 55; *Reyes v. Beneficial State Bank* (2022) 76 Cal.App.5th 596, 604-605 (*Reyes*)).

California follows the so-called "American rule" when it comes to attorney fees: Parties in civil litigation bear their own unless a contract or statute provides otherwise. (Code Civ. Proc., §§ 1021, 1032, subd. (b), 1033.5, subd. (a)(10); *Santisas v. Goodin*

5

(1998) 17 Cal.4th 599, 606 (*Santisas*); *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) Thus, "'[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.'" (*Santisas*, at p. 608; *Mountain Air*, at p. 751; *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341.) Further, and alternatively, parties may seek fees under Civil Code section 1717, which provides an additional, supplemental basis for awarding "reasonable attorney's fees." (Civ. Code, § 1717.) In some respects, this statute is similar to (and thereby reinforces) the parties' general right to contractually reallocate who pays attorney fees because it is triggered only where there is a contract that "specifically provides that attorney's fees and costs . . . shall be awarded." (*Ibid.*) Yet the relief Civil Code section 1717 authorizes is both simultaneously narrower and broader than the parties' general right to contract: It is narrower because it only applies in "an[] action on a contract" and limits the recovery of fees to those "incurred to enforce that contract," even when parties incur fees litigating other non-contract-based claims (Civ. Code, § 1717, subds. (a) & (c); *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 426), and it is broader because it can authorize an award to a litigant who is otherwise *not* entitled to attorney fees under the plain text of the contract (specifically, a litigant can recover fees under the reciprocal effect of Civil Code section 1717 even if the contract only authorizes recovery by one of the parties to the contract and even if that litigant is trying to *negate* the contract in response to the opposing party trying to enforce the contract) (*Santisas*, at pp. 610-611).

With this background in mind, we turn to the two questions presented in this appeal:  (1) Was there a contractual or statutory basis for Hana to recover attorney fees from Sushi, and (2) was there a contractual or statutory basis for Hana to recover attorney fees from Lee?

## I.    Attorney Fees from Sushi

There is a contractual basis for requiring Sushi to pay Hana attorney fees in prevailing against the negligent misrepresentation claim.  As noted above, the italicized portion of the passage from the original escrow instructions provides "[t]he parties . . . promise to pay" "any and all . . . attorney fees" "incurred by the escrow holder in connection with . . . defending litigation . . . ."  These executed escrow instructions constitute a contract (see *Steel v. Duntley* (1931) 115 Cal.App.451, 453 [so noting]; *Domino v. Mobley* (1956) 144 Cal.App.2d 24, 28 [same]; *Crescenta Valley Moose Lodge v. Bunt* (1970) 8 Cal.App.3d 682, 685 [same]), and their plain text obligates Sushi (a party) to pay *any and all* attorney fees incurred by Hana (the escrow holder) in defending the litigation Sushi initiated.  (Accord, *Santisas*, *supra*, 17 Cal.4th at p. 608 [plain text controls]; *Mountain Air*, *supra*, 3 Cal.5th at p. 752 [same]; see generally Civ. Code, § 1636 ["mutual intention of the parties" controls].)  Because "any and all" is broadly phrased, this clause renders Sushi liable for attorney fees Hana incurs in defending itself against tort claims as well as contract claims.  (*Santisas*, at p. 608 ["broadly" phrased language "may support an award of attorney fees to the prevailing party in an action alleging . . . tort claims"]; *Reyes*, *supra*, 76 Cal.App.5th at p. 618 [same].)

The trial court order focused solely on whether Civil Code section 1717 authorized an award of fees, and concluded that it

7

did not because a claim for negligent misrepresentation is not "[a]n action on a contract." We need not examine whether this ruling was correct because, as noted above, the parties' contract *independently* authorized an award of attorney fees against Sushi, making it unnecessary to resort to Civil Code section 1717.

Sushi responds by asserting that our reading of the original escrow instructions is overbroad because (1) the language we rely upon appears in a paragraph that functions solely or primarily as an indemnity clause, and (2) attorney fees provisions that appear in indemnity clauses only authorize recovery of fees when those fees were incurred by Hana in litigation *with a third party*, not litigation with a party to the contract. We reject this assertion. To be sure, Sushi is correct that the paragraph we cite contains language that obligates the parties to "indemnify and hold [Hana] harmless" from any attorney fees "occasioned [by] any party." Sushi is also correct that "indemnity provision[s]" "generally" "allow[] one party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action between the parties to the contract." (E.g., *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 600; *Rideau v. Stewart Title of Cal., Inc.* (2015) 235 Cal.App.4th 1286, 1298; see also *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 971 ["A provision including attorney fees as an item of loss in an indemnity clause is not a provision for attorney fees in an action to enforce the contract"].) But the paragraph we cite is more than an indemnity clause. (Cf. *Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1335-1338 [denying attorney fees based on a clause that was solely an indemnity clause].) By stating that "[t]he parties . . . promise to pay . . . *as well as* to indemnify and hold the escrow holder

harmless from any and all . . . attorney fees . . . occasioned" by "any party, including costs incurred by the escrow holder in connection with . . . defending litigation . . ." (italics added), this paragraph is *both* an indemnity clause *and* a "promise to pay" fees directly incurred in litigation between the parties; to read this clause as being *solely* an indemnity clause would render the "promise to pay" language a nullity, and we are not allowed to nullify the parties' contractual language (Civ. Code, § 1641; *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503; *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507).  We accordingly reject Sushi's contention at oral argument that an attorney fees provision is valid only if it is contained in a stand-alone clause.  What is more, the original escrow instructions and one of the amendments also contain stand-alone indemnity clauses that would render the language we cite superfluous if it is read solely as a general indemnity clause.

## II.    Attorney Fees from Lee

There is no basis for awarding fees against Lee.

There is no contractual basis.  The attorney fee clause that authorizes a fee award against Sushi only applies to "part[ies]." When Lee assigned "all rights, title, interest in and to the" restaurant to Sushi, he ceased to be a "party" to the escrow instructions, and hence no longer liable for attorney fees as a "party."  (*National Reserve Co. v. Metropolitan Trust Co. of Cal.* (1941) 17 Cal.2d 827, 832-833 [assignment of a contract vests in the assignee all rights and remedies incident thereto]; *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096 [same].) Indeed, the parties conceded in the prior appeal that, as a result of the assignment, Lee was not a proper plaintiff to the negligent

9

misrepresentation claim against Hana.  (*Sushi KJ Corporation v. Hana Escrow Company, Inc.* (Apr. 27, 2023, B321923) [nonpub. opn.], at p. 5.)  Nor does the indemnity language aid Hana either; to the extent Lee is now viewed as a "third party," the indemnity language would potentially entitle Hana to recover attorney fees from *Sushi* for having to defend against Lee's negligent misrepresentation claim—not from *Lee*.

There is also no statutory basis under Civil Code section 1717.  As noted above, this statute only authorizes an award of attorney fees incurred in "[a]n action on a contract."  (Civ. Code, § 1717, subd. (a).)  Here, not only is Lee no longer a party to the contract, but a claim for negligent misrepresentation is also generally viewed as a claim sounding in tort, and *not* "[a]n action on a contract."  (E.g., *McKenzie v. Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89.)  Of course, not *all* negligent misrepresentation claims are tortious; if such a claim is based on a failure to disclose where the duty to disclose arises from a contract-based fiduciary duty, the claim may still at bottom be "[a]n action on a contract."  (See *Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178-1179; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1602.)  But three of the four negligent misrepresentations alleged by plaintiffs are affirmative misrepresentations and the sole alleged nondisclosure is phrased as a failure to disclose the untruth of the three affirmative misrepresentations; this claim is therefore grounded in the general tort duty not to make affirmative misrepresentations.  (E.g., *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 854.)  What is more, the fact that Lee prayed for attorney fees for this claim does not alter our analysis because Lee is not entitled

10

to them for the reasons we have explained; thus, Civil Code section 1717's mandate that attorney fee provisions be construed as being bilateral does not help Hana.

\* \* \*

In light of our analysis, we have no occasion to reach the parties' alternative arguments regarding whether the breach of contract claims alleged in prior iterations of the complaint support an award of attorney fees.

## DISPOSITION

The order is reversed as to the denial of attorney fees for Hana against Sushi only, and remanded for the trial court to determine the amount of fees to be awarded. In all other respects, the order is affirmed. Hana is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

11