Filed 3/27/24  Zheng v. Ing CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN ZHENG, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SALLY ING et al., <br><br> Defendants and Respondents. | B322586 <br><br> (Los Angeles County <br> Super. Ct. No. 20STCV09517) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas W. Stern, Judge.  Affirmed.

Decker Law, James Decker and Griffin Schindler for Plaintiff and Appellant.

Klinkert, Gutierrez & Neavel, James E. Klinkert, Paul J. Gutierrez and Kelly A. Neavel for Defendants and Respondents.

John Zheng (appellant) appeals from a judgment entered following the trial court's grant of a motion for nonsuit brought by respondents Sally and Samuel Ing (respondents) after appellant presented his case-in-chief at trial. Appellant argues the trial court erred in granting nonsuit on his claims against respondents, which stemmed from a contract for the sale of commercial real property. We find no error and affirm the judgment.

## FACTUAL BACKGROUND

On January 7, 2018, appellant and respondents entered into a contract for the sale of real property (contract or agreement) located at 9443-9445 Valley Boulevard in Rosemead, California (the property).[1] Respondents were listed as the buyers, and appellant was listed as the seller. The contract as finally negotiated stated a purchase price of $795,000. Respondents indicated they would make an initial deposit of

---

[1] Appellant's complaint lists the date of the agreement as January 9, 2018. In their briefing to this court, the parties repeatedly place the date of the agreement as January 6, 2018. We note a document entitled "Seller Counter Offer No. 2," which is chronologically the last document of the contractual documents in the record, provides: "Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on . . . Jan/07/2018 at 4:00 PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document." Based on this language and appellant's initials preceding the language, we place the date of the agreement as January 7, 2018.

$22,500 by personal check and obtain a first loan in the amount of $350,000.

Upon execution of the contract, respondents made a deposit of $22,500 into escrow.  Respondents had sufficient resources to buy the property, but preferred to finance a portion of it with a loan.

The contract contained the following integration clause: "All understandings between the Parties are incorporated in this Agreement.  Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. . . . **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller**."

The contract contained the following language concerning respondents' investigation of the property:  "Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 18B."

As to title and vesting, the contract provided:  "Buyer shall be provided a current preliminary title report ('Preliminary Report'). . . .  Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 18B."

Paragraph 18.B.(1) provided:  "**BUYER HAS: 17 . . . Days** After Acceptance, unless otherwise agreed in writing, to . . . complete all Buyer investigations; review all disclosures, reports, lease documents to be assumed by Buyer . . . and other applicable

information, which Buyer receives from Seller, and approve all matters affecting the Property."

It further provided: "By the end of the time specified in paragraph 18B(1) . . . , Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation . . . of this Agreement."

The final counteroffer provided the final purchase price and indicated: "(2) property to be sold as is, in its present physical condition. Seller will not do any repairs and will not provide termite report or clearance. (3) No Loan Contingencies."

Escrow opened on January 8, 2018. The title report was provided to respondents via e-mail on January 11, 2018.

The preliminary title report showed title to the property was vested in Tammy Jing Gong. Tammy Jing Gong was not a party to the transaction, and respondents were concerned the property was owned by someone other than the person with whom they had entered the contract. In addition, the title report showed the property was encumbered by a $400,000 deed of trust, a $300,000 deed of trust, a $2.45 million deed of trust, and another $300,000 deed of trust. The loans encumbering the property equaled approximately $3.45 million, which was more than four times the purchase price of the property. In addition, the property was the subject of two recorded notices of building code violations, a lien for past due property taxes, and abstracts of judgments and judgments in the amounts of $14,392.83, $1,114,634.26 and $800,702.14. This information concerned respondents.

Respondents asked several times for additional disclosures concerning the property including "income statements and estoppels," yet they were never delivered.

4

Respondents decided to cancel the transaction. Respondents never approved the title report or any other matter affecting the property as required under the contract.

On January 16, 2018, respondents provided a signed document captioned "Cancellation of Contract, Release of Deposit and Cancellation of Escrow." Through the document, respondents cancelled the contract. Respondents noted as the reason being "buyers can not get the loan approval due to all the exceptions in the preliminary title report." Respondents indicated they were cancelling pursuant to paragraph 14 of the contract. On January 23, 2018, respondents provided a followup iteration of the same document clarifying that they were cancelling pursuant to paragraph 18 of the contract.

A notice of default and election to sell one of the deeds of trust was recorded on January 29, 2018. Respondents did not learn of this default until after they had cancelled the transaction. A few months later, on November 30, 2018, another encumbrance identified in the title report became the subject of foreclosure proceedings.

On January 24, 2018, the escrow holder provided notice of the buyer's request for release of deposit and escrow cancellation. On February 1, 2018, the escrow holder informed the parties that because there was a dispute on the cancellation, the matter would be put on hold until the escrow holder received further instructions.

At trial, appellant testified that in addition to respondents' offer, he had received one other offer to purchase the property. Although the other offer was for more money, appellant accepted respondents' offer because he thought it would close faster than the other offer, and appellant was on the verge of foreclosure.

Appellant testified "timing-wise" the other offer was "impossible" for him.

## PROCEDURAL HISTORY

On March 9, 2020, appellant filed a complaint against respondents for fraudulent inducement, breach of written contract, and declaratory relief. The claim for declaratory relief sought a judicial determination as to which party was entitled to receive respondents' deposit.

On May 5, 2020, respondents filed an answer to the complaint generally denying the allegations and stating several affirmative defenses. On the same day, respondents filed a cross-complaint seeking rescission and restitution, declaratory relief, statutory penalties and damages for elder abuse.

Jury trial commenced on April 26, 2022. After appellant presented his case, respondents moved for nonsuit on the complaint pursuant to Code of Civil Procedure section 581c. Following argument, the trial court granted the motion for nonsuit. As to the cause of action for breach of written contract, the trial court found the jury could not, as a matter of law, find that respondents' cancellation was invalid or improper. The court further found there was no evidence of damages to appellant, or that he suffered any loss because of the cancellation. The court also granted nonsuit as to the fraudulent inducement cause of action, finding there was insufficient evidence that respondents made a promise without intent to perform when they entered into the contract. As to declaratory relief, the court determined that respondents were entitled to have the deposit returned to them.

Following the trial court's ruling, respondents moved to dismiss the cross-complaint without prejudice. The court granted the motion.

Judgment in favor of respondents was entered on June 2, 2022. Notice of entry of judgment was served and filed on June 3, 2022, by the court clerk. Appellant filed a notice of appeal from the judgment on July 29, 2022.

## DISCUSSION

**I.    Applicable law and standard of review**

Code of Civil Procedure section 581c provides that after a plaintiff has completed presentation of evidence in a trial by jury, the defendant may move for a judgment of nonsuit. "A motion for nonsuit is a procedural device which allows a defendant to challenge the sufficiency of plaintiff's evidence to submit the case to the jury." (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117.) A trial court "may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor." (*Id.* at pp. 117-118.) A trial court may grant a motion for nonsuit if the court determines that, as a matter of law, "the evidence presented by plaintiff is insufficient to permit a jury to find in his favor." (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.)

We review an order granting a motion for nonsuit de novo. We must interpret the evidence most favorably to the plaintiff's case and resolve all presumptions, inferences and doubts in favor of the plaintiff. Judgment in favor of the defendant must be required as a matter of law. (*Nally v. Grace Community Church, supra*, 47 Cal.3d at p. 291.)

## II.    Breach of written contract

The trial court interpreted the contract as allowing the buyers to evaluate the preliminary title report and other relevant conditions before making a final decision as to whether to proceed with the transaction.  The trial court found appellant failed to set forth evidence that respondents had not done so in good faith.  The trial court also found appellant failed to present evidence of damages from respondents' permissible cancellation of the contract.

Appellant points out that when respondents first submitted their cancellation of the contract, they indicated they were cancelling the agreement pursuant to paragraph 14 of the agreement because they could "not get the loan approval due to all the exceptions in the preliminary title report."  Appellant argues that the issue is whether those reasons permitted respondents to cancel the contract.  If not, appellant argues, then respondents' failure to perform constitutes a breach.  Appellant further argues paragraph 14 is inapplicable, and respondents expressly waived any loan contingency.  Therefore, appellant adds, respondents were precluded from cancelling the purchase agreement based on their inability to obtain a loan.[2]  Because this was the only reason stated for cancellation, appellant argues,

---

[2]    Appellant highlights language in the form contract stating: "**NO LOAN CONTINGENCY**: Obtaining any loan specified above is NOT a contingency of this Agreement.  If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies."  However, the box indicating this paragraph was intended to be part of the agreement is not checked.

8

respondents breached the purchase agreement when they submitted their cancellation on January 16, 2018.

Under the terms of the contract, respondents were within their rights to cancel the contract within 17 days after receiving the preliminary title report with the full list of exceptions. Pursuant to paragraph 16.A., respondents' acceptance of "the condition of, and any other matter affecting the Property," was an express contingency of the agreement. Further, pursuant to paragraph 17.A., respondents' "review of the Preliminary Report and any other matters which may affect title" were "contingenc[ies] of this Agreement as specified in paragraph 18B." Paragraph 18.B. allowed respondents 17 days to cancel. Respondents canceled within the specified time frame.

These provisions gave respondents a broad right to cancel the contract if respondents did not approve of any matter affecting the property. In fact, the contract was contingent upon respondents' approval. Such contingency allowed respondents to withdraw if the contingency was not met. (See *Steiner v. Thexton* (2010) 48 Cal.4th 411, 419 ["a common form of real estate contract binds both parties at the outset . . . while including a contingency . . . that allows one or both parties to withdraw should the contingency fail"]; *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1341 ["'A condition precedent must be satisfied prior to the creation of an enforceable contract . . . .'"]; *Crescenta Moose Valley Lodge v. Bunt* (1970) 8 Cal.App.3d 682, 687 ["If a condition is solely for the benefit of the buyer, its effect . . . is to give the buyer an option not to consummate the purchase if he fails to meet the condition."].) A contingency of the contract— respondents' review and acceptance of the preliminary report—

9

was not met. Thus, respondents were permitted to withdraw from the contract.

Respondents' reference on the initial cancellation form to their inability to obtain a loan due to the preliminary title report is inconsequential. Respondents were entitled to cancel the contract after viewing the unacceptable preliminary title report within the time frame permitted for cancellation. No provision of the contract required that respondents articulate with specificity the reason for their cancellation. Respondents' initial cancellation referenced "all the exceptions in the preliminary title report," which was sufficient reason for the cancellation. Respondents' revised cancellation, signed on January 23, 2018, was carried out within the 17-day time period following the January 7, 2018 contract, and appellant provides no objection to its timeliness.[3] This second draft of the cancellation clarified that it was undertaken pursuant to paragraph 18 of the contract, which permitted cancellation of the contract within 17 days.

Respondents' actions were well within their rights and did not constitute a breach of the contract as a matter of law. The trial court properly granted respondents' motion for nonsuit as to appellant's breach of contract claim.[4]

---

[3] Even if the date the parties entered the contract was January 6, 2018, January 23, 2018, was the 17th day following entry of the contract, thus the second draft of the cancellation was still provided within the 17-day time period permitted under the contract.

[4] Because we have found the trial court properly granted nonsuit of appellant's breach of contract claim, we decline to address appellant's argument regarding damages from any such breach. There was no breach of contract as a matter of law,

10

## III. Declaratory relief

Appellant's cause of action for declaratory relief concerned "the $22,500.00 earnest money deposit being held in escrow." Appellant sought a judicial determination of the respective rights and duties of the parties as well as an award of costs and attorney fees. Following respondents' motion for nonsuit as to appellant's complaint, the court determined that respondents were entitled to have the deposit returned to them.

Appellant objects to the trial court's ruling on procedural grounds, arguing, "[a] trial court may grant nonsuit only on the ground(s) raised" in the motion. (Quoting *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1200.) Appellant quotes *John Norton Farms, Inc. v. Todagco* (1981) 124 Cal.App.3d 149, 161, for the proposition that "[i]t is also a fundamental rule that the motion should state the precise grounds on which it is made, with the defects in the plaintiff's case clearly and particularly indicated. This gives the plaintiff an opportunity to cure the defect by introducing additional evidence." Appellant argues only the defendant, not the trial court, may bring such a motion. (Code Civ. Proc., § 581c, subd. (a).) He claims respondents did not move for nonsuit on the declaratory relief cause of action.

---

therefore appellant may not recover contractual damages. Further, appellant asks we disregard any argument regarding the fraudulent inducement claim as his appeal only addresses his causes of action for breach of contract and declaratory relief. Because there was no breach of contract as a matter of law, and appellant has failed to appeal the fraudulent inducement cause of action, the issue of damages is irrelevant.

Appellant also makes a due process argument, citing *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 64, for the proposition that "[i]t is a fundamental aspect of procedural due process that, before relief can be granted against a party, the party must have notice of such relief and an opportunity to be heard."].) Appellant argues where "the denial of due process prevents a party from having a fair hearing, the denial of due process is reversible per se." (*Beverly Hills Multispecialty Group, Inc. v. Workers' Comp. Appeals Bd.* (1994) 26 Cal.App.4th 789, 806.) Appellant argues no notice was given that his declaratory relief claim could be subject to the motion for nonsuit, thus he was prejudicially denied a fair hearing on that matter.

Respondents did not limit their motion for nonsuit to specific causes of action, but instead sought nonsuit "as to the complaint based on the fact that . . . the buyer was entitled under the contract to cancel the escrow based on disapproval of the preliminary title report." Appellant fails to provide a citation to the record supporting his contention that respondents moved for nonsuit only as to appellant's claims for breach of contract and fraudulent inducement. While respondents mainly argued as to those two causes of action, they did not expressly limit their motion.

Further, appellant had sufficient notice that the $22,500 escrow deposit was at issue when the parties argued respondents' motion for nonsuit. Respondents' attorney specified, "I would also move for judgment on the cross-complaint to the extent of the rescission claim. Based on the evidence in front of us now, it's obvious [respondents] had the right to cancel that agreement. They did." Respondents' first cause of action for rescission and

restitution sought return of the deposit.  Appellant's attorney was present in court when respondents raised the rescission claim and was permitted to make argument concerning this issue.

In addition, the trial court made it clear during argument that it intended to resolve the declaratory relief cause of action, stating: "The third cause of action is the declaratory relief. . . . The court finds that [respondents] are entitled to $22,500—well, the deposit."  Appellant's attorney made no objection to the court deciding the issue at that time.  The court thoroughly reviewed the complaint and cross-complaint in the presence of the parties to make sure there were no issues remaining to go to the jury.  In doing so, the court noted, "The cross-complaint has, I'm reading from the caption, 'rescission and restitution.'"  The court found, without objection from appellant, "I think the rescission and restitution we essentially dealt with."

Appellant had adequate notice and an opportunity to be heard regarding the resolution of the $22,500 deposit.  By failing to object to the trial court's determination of the issue during the hearing on respondents' motion for nonsuit, he has forfeited any such objection on appeal.  (*People v. McCoy* (2013) 215 Cal.App.4th 1510, 1525 [failure to raise constitutional claim before the trial generally forfeits issue on appeal].)

Finally, even if appellant had insufficient notice the declaratory relief cause of action was at issue—which he did not—the language of the contract requires the outcome stated by the court.  The transaction failed not because of a breach by respondents, but because of a failure of a contingency which relieved respondents of their obligation to perform.  Under the circumstances, respondents were entitled to their deposit as a matter of law.  "[G]rounds not specified in a motion for nonsuit

13

will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion." (*Lawless v. Calaway* (1944) 24 Cal.2d 81, 94, abrogated on other grounds as recognized in *Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 310.) Appellant could not have altered the outcome of the declaratory relief cause of action. Because the contract mandated that the deposit be returned to respondents, the trial court properly considered and ruled on the issue as a matter of law.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs of appeal.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
HOFFSTADT, J.

14